576 A.2d 1049

COMMONWEALTH of Pennsylvania

v.

Bruce A. KOHL, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 23, 1989.

Filed June 18, 1990.

Petition for Allowance of Appeal Granted
Nov. 14, 1990.

74

Michael Brunnabend, Allentown, for appellant.

Richard R. Tomsko, Asst. Dist. Atty., Allentown, for Com., appellee.

Mary B. Seiverling, Deputy Atty. Gen., Harrisburg, intervenor.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, OLSZEWSKI, DEL SOLE, MONTEMURO, TAMILIA, KELLY and JOHNSON, JJ.

MONTEMURO, Judge:

Following a trial by jury, appellant, Bruce Kohl, was convicted of two counts of homicide by vehicle while under the influence of alcohol,[1] two counts of homicide by vehicle,[2] two counts of driving while under the influence of alcohol or controlled substance,[3] and the summary offenses of reckless driving [4] and driving a vehicle at unsafe speed.[5] The trial court denied appellant's post-trial motions and sentenced appellant to the mandatory minimum sentence of not less than three (3) years to a maximum of seven (7) years on the four homicide counts, and imposed a fine and a sentence of not less than thirty (30) days nor more than

1. 75 Pa.C.S.A. § 3735.
2. 75 Pa.C.S.A. § 3732.
3. 75 Pa.C.S.A. § 3731(a)(1) and (4).
4. 75 Pa.C.S.A. § 3714.
5. 75 Pa.C.S.A. § 3361.

twelve (12) months on the summary offenses. Following denial of his Motion to Modify Sentence, appellant brought this timely appeal. On appeal, appellant challenges the constitutionality of a blood alcohol test performed on a sample of his blood under the authority of the implied consent law, 75 Pa.C.S.A. § 1547(a).[6] We find that the blood test was constitutionally invalid, and remand and reverse for a new trial.

Appellant's convictions stem from a one-car collision which occurred at approximately four o'clock in the morning on March 30, 1985. While proceeding around a sharp bend in the road, appellant's car struck a utility pole and then a nearby retaining wall, causing the death of his two passengers, Jeffrey Greb and Mark Moser. The police arrived at the scene shortly after the accident, in time to remove appellant and the two passengers from the car before the car burst into flames. Jeffrey Greb died at the scene of the accident, and Mark Moser died while being transported to the hospital.

Appellant, rendered unconscious by the accident, was taken from the accident scene to the hospital. He remained unconscious throughout the day. When appellant was brought into the hospital, the emergency room doctor ordered a blood test of appellant for basic blood work. A police officer went from the scene of the accident to the hospital. When he arrived at the hospital, the officer requested that a blood sample be taken from appellant for analysis as to alcohol content. The police officers investigating the accident did not smell alcohol on appellant's breath or notice any other signs of alcohol consumption by appellant.

A hospital technician performed a blood alcohol analysis on the sample taken for medical reasons and on the sample drawn by request of the police officer. The analysis on the test requested by the police produced a blood alcohol level of 0.15%. There were no results of the analysis performed on the sample drawn for medical purposes. At the time the

6. 75 Pa.C.S.A. § 1547(a). (Purdon 1984).

blood was drawn from his body, no charges had been filed against appellant, appellant was not under arrest, and the police did not have a warrant to conduct the test. Appellant was arrested upon his release from the hospital on April 29, 1985.

In his pretrial motion, appellant moved to suppress the results of the blood test on the basis that the test violated his constitutional rights in that the police lacked probable cause to order the test and appellant did not consent to the test. The trial court denied the motion to suppress, finding that on the basis of the facts of this case, probable cause to order the search did exist. Following his trial and conviction, appellant filed post-verdict motions, which were denied by the trial court.

On appeal, appellant claims that the trial court erred in admitting the results of the blood alcohol test performed on the sample of his blood because the test violated the Fourth Amendment. We agree.

The blood alcohol test performed on appellant was authorized by the "implied consent law" set forth in 75 Pa.C.S.A. § 1547(a):

**§ 1547. Chemical testing to determine amount of alcohol or controlled substance**

(a) **General rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both; or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a

pedestrian required treatment at a medical facility or was killed.

75 Pa.C.S.A. § 1547(a).

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause ..."[7]

■ The administration of a blood alcohol test is a search falling within the protection of the Fourth Amendment. *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602, 109 S.Ct. 1402, 1412, 103 L.Ed.2d 639 (1989), *citing Schmerber v. California*, 384 U.S. 757, 767–68, 86 S.Ct. 1826, 1833–34, 16 L.Ed.2d 908 (1966), *Winston v. Lee*, 470 U.S. 753, 760, 105 S.Ct. 1611, 1616, 84 L.Ed.2d 662 (1985).

■ The Fourth Amendment applies only to searches and seizures effected by the Government or its agents. *Commonwealth v. Cieri*, 346 Pa.Super. 77, 499 A.2d 317, 320–21 (1985), *quoting United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1985) (citations omitted). Here, appellant's blood was drawn and tested for alcohol content by hospital technicians at the request of the police officer. The hospital personnel acted as agents of the Commonwealth in administering the test. *See Commonwealth v. Cieri, supra*, 346 Pa.Superior Ct. at 85, 499 A.2d at 321 (where private hospital nurse withdrew defendant's blood according to routine hospital procedure, and later forwarded sample to police for blood alcohol test, nurse

---

7. U.S. CONST. amend. IV.
   Constitutional protection against unreasonable searches and seizures is also provided in article I, section 8 of the Pennsylvania Constitution:
   The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause ...
   PA. CONST. art. I, § 8.

acted as an "instrument" or "agent" of the government). Thus, the blood alcohol test performed on appellant's blood sample must meet the test of reasonableness under the Fourth Amendment.

## I. ADMISSIBILITY OF THE BLOOD ALCOHOL TEST UNDER § 1547(a)(1)

■ This Court has previously upheld the constitutional validity of a warrantless search conducted under § 1547(a)(1), interpreting the requirement that the officer have "reasonable grounds" to believe that the driver was driving under the influence as requiring that the officer have "probable cause" to believe that the driver was under the influence. *Commonwealth v. Quarles*, 229 Pa.Super. 363, 388, 324 A.2d 452, 466 (1974). *See also Commonwealth v. Smith*, 382 Pa.Super. 288, 555 A.2d 185, 189 (1989); *Commonwealth v. Cieri, supra* 346 Pa.Super. at 87, 499 A.2d at 322. Probable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol or a controlled substance. *Smith, supra* 382 Pa.Super. at 296, 555 A.2d at 189; *Commonwealth v. Pelkey*, 349 Pa.Super. 373, 378–79, 503 A.2d 414, 416 (1985), *citing Commonwealth v. Hicks*, 434 Pa. 153, 158, 253 A.2d 276, 279 (1969).

■ The trial court held that the test performed on appellant's blood sample fell within the purview of § 1547(a)(1), finding that the police officer had probable cause to believe that appellant had been driving while under the influence. In reaching this conclusion, the trial court cited the following facts:

The police knew that a serious one-car accident at 4:00 A.M. had occurred causing the death of two men and serious injury to a third. Defendant was found unconscious and pinned behind the steering wheel of his car. They believed that the defendant had operated his vehicle at an excessive rate of speed due to the excessive damage to the car on a roadway and bridge with posted speed limits of 35 m.p.h. The pavement was dry, the visibility

clear and there were no obstructions of any kind that would inhibit the defendant's driving. The accident scene contained no brake marks or attempts to steer the vehicle away from the telephone pole and cement wall where the car finally came to rest.

Suppression Court Opinion at 13.

We disagree that these facts establish the requisite probable cause to believe that appellant was driving while under the influence. This case is markedly different from those cases in which this Court has held that the probable cause requirement of § 1547(a)(1) had been met. In *Commonwealth v. Smith, supra,* 382 Pa.Super. at 297, 555 A.2d at 189, this Court held that the police officer had probable cause to believe the defendant had been driving under the influence of alcohol where the defendant smelled of alcohol and had glassy, bloodshot eyes, and the accident consisted of defendant's car rolling over at least once. In *Commonwealth v. Hipp,* 380 Pa.Super. 345, 551 A.2d 1086 (1988), the Court found the police officer had probable cause to believe appellant had been driving under the influence where appellant's eyes were bloodshot, his speech was slurred, and he had a strong odor of alcohol on his breath. In *Commonwealth v. Haynos,* 363 Pa.Super. 1, 525 A.2d 394 (1987), *allocatur denied,* 517 Pa. 604, 536 A.2d 1329 (1987), the Court held that probable cause existed where the arresting officer observed that defendant was involved in a one-car accident and the officer detected an odor of alcohol on defendant's breath. In *Commonwealth v. DeFaveri,* 352 Pa.Super. 96, 507 A.2d 398 (1986), *appeal denied,* the Court found that probable cause existed where a serious accident had occurred, and defendant smelled strongly of alcohol and was combative at the scene of the accident. In *Commonwealth v. Pelkey, supra,* probable cause existed where a serious motor vehicle accident had occurred involving a driver who was found in a semiconscious state with the odor of alcohol on his breath. 349 Pa.Super. at 379, 503 A.2d at 416. In *Commonwealth v. Cieri, supra,* the Court held that probable cause existed where the police sergeant and

the hospital nurse smelled alcohol on appellant's breath, there was evidence of marijuana use in appellant's car, and a serious accident had occurred. 346 Pa.Super. at 88–89, 499 A.2d at 323. In *Commonwealth v. Guiliano*, 274 Pa.Super. 419, 424, 418 A.2d 476, 479 (1980), probable cause existed where appellant's pupils, eyes, and speech all suggested consumption of alcohol, and a serious one-car accident had occurred. In *Commonwealth v. Funk*, 254 Pa.Super. 233, 385 A.3d 995 (1978), the Court held that probable cause existed where police officers smelled alcohol on appellant, appellant was "stuporous" at the time the blood was taken, and an accident had occurred.

Significantly, in each of these cases there was some indicia of alcohol or drug consumption by the defendant before the police requested a blood or breathalyzer test. Here, neither the officer nor the hospital personnel detected any signs of alcohol consumption by appellant. There was no odor of alcohol on appellant, there was no evidence of bottles or cups that may have contained alcohol, and no one observed appellant driving erratically. Based upon these facts and the facts supporting the finding of probable cause in the cases cited above, we hold that the police did not have probable cause to believe appellant was driving under the influence. In the absence of any evidence of alcohol or drug use, the occurrence of a one-car accident during the early morning hours of a clear, dry day in an area with a low accident incidence rate is not a sufficient factual basis to support the belief that the driver was under the influence of alcohol.

Because the police did not have probable cause to believe that appellant was driving under the influence of alcohol, we hold that the blood test was not valid under § 1547(a)(1) of the implied consent law.

## II. ADMISSIBILITY OF THE BLOOD ALCOHOL TEST UNDER § 1547(a)(2)

■ The trial court found that the blood test was also valid under § 1547(a)(2), because appellant had been the

operator of a vehicle involved in an accident resulting in death and bodily injury which required treatment at a medical facility. Undoubtedly, the conditions of § 1547(a)(2) were met. Appellant challenges § 1547(a)(2) as unconstitutional under the Fourth Amendment.

In our opinion in the companion to this case, *Commonwealth v. Danforth*, 395 Pa.Super. 1, 576 A.2d 1013 (1990) (en banc), we held that a blood test administered on the basis of § 1547(a)(2) violates an individual's federal and state constitutional right against unreasonable searches and seizures. We reasoned that the conditions set forth in § 1547(a)(2) do not establish probable cause to believe that the driver of the vehicle involved in the accident was under the influence of alcohol or a controlled substance, and, therefore, a test authorized by § 1547(a)(2) is constitutionally invalid. Hence, we find that the test performed on appellant was not valid under § 1547(a)(2).[8]

We hold that the blood alcohol test performed on appellant violated his constitutional right against unreasonable searches and seizures. The results should not have been admitted against him at trial. *See Commonwealth v.*

8. We disagree that the cases cited by Judge Kelly in his Dissenting Opinion in support of his conclusion that § 1547(a)(2) is unconstitutional are dispositive of the question, because those cases involve inventory searches of automobiles, random stops of drivers to check the driver's license and the registration of the vehicle, and police roadblocks and checkpoints. These types of searches have long been recognized as being "limited in magnitude compared to other intrusions," *see Delaware v. Prouse*, 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979); thus, we find that the analysis set forth in the cases is not readily applicable to the blood, breath and urine tests authorized by § 1547(a). Moreover, we disagree that the constitutionality of the blood test in this case is appropriately resolved by Judge Kelly's newly developed "reasonable suspicion/medical exigency" test. As discussed in part I, *supra*, if a police officer has probable cause to believe that the motorist has been driving under the influence, the officer may lawfully administer a blood, breath or urine test pursuant to section 1547(a)(1). Further, the fact that a search may lead to "potentially exculpatory" evidence has never been a justification for making an unconstitutional search valid. If that were the test, then every search would be constitutionally valid because any search has the potential for dispelling suspicions that a crime has been committed.

*Williams,* 380 Pa.Super. 227, 551 A.2d 313, 317 (1988).[9] We vacate the judgment of sentence and remand for a new trial.

Vacated and remanded. Jurisdiction is relinquished.

CIRILLO, P.J., and CAVANAUGH, DEL SOLE and JOHNSON, JJ., join.

OLSZEWSKI, J., files a concurring opinion.

TAMILIA, J., files a dissenting opinion joined by BROSKY, J.

KELLY, J., files a dissenting opinion.

OLSZEWSKI, Judge, concurring.

I agree with the decision reached by the majority; however, I write separately to emphasize the limited scope of our decision.

The decision reached by the majority is compelled by long-standing precedent. Taking blood samples constitutes a search and seizure. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Contrary to the implication of 75 Pa.C.S.A. § 1547(a), drivers cannot be "deemed" to consent to warrantless searches and seizures as a condition on the right or privilege of driving. *Commonwealth v. Quarles,* 229 Pa.Super. 363, 324 A.2d 452, 460–462 (1974). The blood test must fall under some recognized exception to the warrant requirement. *Id.*

Ordinarily, blood tests are justified on grounds of probable cause. 75 Pa.C.S.A. § 1547(a)(1); *Commonwealth v. Quarles,* 229 Pa.Super. 363, 324 A.2d 452, 460–462 (1974) (holding that blood tests are constitutional where there is probable cause). In the present case, the blood test was based solely on the severity of the accident, applying 75

9. Appellant also contends that (1) the trial court erred in allowing a pathologist to testify over objection to the speed of his vehicle; (2) the mandatory sentencing provision for the crime of homicide by vehicle while driving under the influence of alcohol is unconstitutional. Because of our disposition of appellant's suppression claim, we need not address these issues.

Pa.C.S.A. § 1547(a)(2). Severity of the accident, standing alone, is not sufficient grounds to justify a warrantless blood test; accordingly, 75 Pa.C.S.A. § 1547(a)(2) is unconstitutional.

Where, as here, the only reason for the blood test is the severity of the accident, a blood test is an illegal search and seizure. If the police officer in this case had noticed any signs of intoxication, such as an odor of alcohol, bloodshot eyes, lack of coordination or slurred speech, the blood test would have been authorized by 75 Pa.C.S.A. § 1547(1). *See, e.g., Commonwealth v. Haynos,* 363 Pa.Super. 1, 525 A.2d 394 (1987), *Commonwealth v. Pelkey,* 349 Pa.Super. 373, 503 A.2d 414 (1985) (probable cause based on existence of an accident and odor of alcohol on the driver's breath). Consequently, our decision affects only those cases in which the officer requesting the blood test has no reason to suspect intoxication.

TAMILIA, Judge, dissenting.

The majority Opinion vacates the judgment of sentence and remands the case for a new trial by holding that the blood alcohol test performed on appellant violated his constitutional rights pursuant to the fourth amendment of the United States Constitution and Article I, section 8, of the Pennsylvania Constitution. I respectfully dissent and would hold that 1) the Implied Consent Statute, 75 Pa.C.S. § 1547(a)(2), clearly creates a constitutionally permissible basis for a search based upon special need in the exercise of a governmental interest; 2) the admission of testimony from a pathologist as to the probable speed of the vehicle was not reversible error, and 3) the mandatory sentencing provisions of the drunk driving laws are constitutional and 4) they do apply to person over 18 years and under 21 years of age. I would, therefore, affirm the judgment of sentence of the trial court.

The facts of this case may be briefly stated as follows. The appellant Bruce Kohl, who was 18 years of age at the time, was involved in a one-car accident on March 30, 1985

at approximately 4:00 a.m. Appellant's vehicle struck a pole and then hit a retaining wall. When police arrived at the scene, they found appellant unconscious behind the wheel of the car which contained two other passengers. The three occupants were removed from the car shortly before it burst into flames. One passenger was dead at the scene, the other died in an ambulance en route to the hospital. Appellant was taken to the hospital by Medi-vac and remained unconscious throughout the following day. During that time, police, following investigation of the accident scene, went to the hospital and requested that a blood sample be taken from defendant for analysis as to alcohol content. A second sample had been ordered by the emergency room doctor, but it does not enter into the consideration here. Between March 30th and April 23rd, appellant was unavailable for questioning, despite several attempts by police, as he was hospitalized and doctors would not permit questioning. Arrest warrants were issued on April 29, 1985 based on laboratory findings that appellant's blood alcohol content was .15 per cent.

On April 23, 1985, police were informed appellant could be questioned and, upon contacting him in his hospital room and informing him of his rights, defendant declined to answer any questions by the officer.

Subsequently, a motion was made to suppress the blood tests on the ground of infringement of his constitutional rights. Appellant moved to quash indictments and to discharge all charges pending against him. The motions to quash and discharge were denied and the case proceeded to a trial by jury, following which appellant was convicted of two counts each of homicide by vehicle,[1] homicide by vehicle while under the influence of alcohol [2] and driving under the influence.[3] For the vehicular homicide while driving under the influence convictions, appellant was sentenced to three to seven years imprisonment on each count, to run concur-

1. 75 Pa.C.S. § 3732.
2. 75 Pa.C.S. § 3735.
3. 75 Pa.C.S. § 3731.

rently. For driving under the influence, he was fined $300 and sentenced to 30 days to 12 months imprisonment, consecutive to the homicide sentences.

In deciding this case, the majority relies on the rationale and conclusions it developed in *Commonwealth v. Danforth,* 395 Pa.Super. 1, 576 A.2d 1013 (1990), as the constitutionality of the implied consent law was similarly at issue there. This case, to a far greater extent than *Danforth,* establishes the wisdom of the legislation and the necessity for the Commonwealth to create a "special need" exception to fourteenth amendment search and seizure requirements of warrant or probable cause in order to obtain blood samples where injury requiring medical attention or death occurs in motor vehicle accidents.

The trial court found that either under 75 P.S. § 1547(a)(1) or section 1547(a)(2), there was probable cause to obtain a blood test, or implied consent to do so. The trial court does not discuss the issue of constitutionality further but relies on the findings by the suppression judge. The suppression judge likewise found that the facts in this case satisfied the reasonable grounds requirement of section 1547(a)(1). In both the suppression and trial Opinions, the judges relied on the facts that this was a serious single vehicle accident at 4:00 a.m., causing the death of two men and serious injury to a third. Police believed appellant had operated his vehicle at an excessive rate of speed, due to the damage to the car, on a roadway posted for 35 miles per hour. The roadway was dry, visibility clear and without obstruction to inhibit defendant's driving. There was no evidence of braking or skid marks. Police could not communicate with defendant due to his unconscious condition, and the automobile was consumed by flames almost immediately after removal of the three occupants.

As to section 1547(a)(2), the suppression court properly accorded a strong presumption of constitutionality to lawfully enacted legislation. *Martin v. Unemployment Compensation Board of Review* 502 Pa. 282, 466 A.2d 107

(1983), *cert. denied* 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 541 (1984).

While the trial court found that despite lack of evidence of alcohol ingestion from odors or physical signs exhibited by the appellant, there was other evidence from the circumstances surrounding the accident to give rise to a reasonable belief (probable cause) that the driver was intoxicated, permitting the prearrest testing of appellant pursuant to *Commonwealth v. Quarles*, 229 Pa.Super. 363, 324 A.2d 452 (1974); *Commonwealth v. Cieri*, 346 Pa.Super. 77, 499 A.2d 317 (1985), and *Commonwealth v. Pelkey*, 349 Pa.Super. 373, 503 A.2d 414 (1985). However, in each of those cases, the odor of alcohol was detected on drivers not involved in serious accidents. Here, appellant was seriously injured and his two passengers killed but no odor of alcohol was detected nor was there present any other behavior or observations giving rise to a reasonable belief of alcohol ingestion. Thus reliance on section 1547(a)(1) does not address the issue of constitutionality framed by this case;[4] nor does *Commonwealth v. Smith*, 382 Pa.Super. 288, 555 A.2d 185 (1989), which has facts similar to those in this case except that the odor of alcohol *was* detected and the constitutional issue was not present.

All relevant preliminary issues raised by the implied consent provision in section 1547(a)(2) have been resolved by *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), as thoroughly discussed in *Commonwealth v. Danforth*, 395 Pa.

---

**4.** Implied Consent Law, 75 Pa.C.S. 1547(a)(2):

(a) **General rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

Super. 1, 576 A.2d 1013 (1990) (Tamilia, J., dissenting). While *Skinner* refused to consider whether a regulation, fulfilling a governmental special need to protect persons from injury and death in the operations of railroad, requiring blood, breath or urine testing in the event of an accident resulting in injury or death, was constitutional if such results were used in criminal prosecution, I fail to see how such a result could be denied. This case, far more than *Danforth*, illustrates the absolute necessity of section 1547(a)(2), which, in its very narrow and limited manner, provides the necessary legal basis for testing. To hold otherwise would be to permit the most serious and egregious cases, which the statute was designed to prevent, to go undetected because of inability of the police to conduct even a cursory preliminary evaluation. *Danforth* and this case raise the additional problem of detecting possible drug use when behavior cannot be observed, since the odor of most drugs is not detectable and the behavioral observations are not possible, or may be compatible with other factors related to the accident and emergency treatment. When persons are dead or so badly injured they must be transported forthwith to a hospital in an unconscious state, the usual opportunity to observe behavior or detect odors of alcohol is simply not present. The first duty is to save lives under the facts, whereas, in an ordinary DUI stop, ample opportunity exists to establish probable cause for testing. The statute requires that when conditions are relatively normal in the usual stop, reasonable cause must exist to require testing. Common experience informs us that this is usually sufficient as the indicators of alcohol or drug use are detectable by a trained observer such as a police officer. As *Skinner* explained, this is sufficient under the fourteenth amendment to go forward with a test without a warrant. In the more serious and difficult situation, when an injury requiring medical treatment or death occurs, the law does not require preliminary attempts to establish probable cause, as treatment and care become paramount. Under those circumstances, probable cause is not essential because the Commonwealth has placed such great impor-

tance on detecting and preventing the most serious conse-
quence of driving while intoxicated, as a condition of grant-
ing the privilege (or right) to drive, implied consent substi-
tutes for reasonable belief. For this Court to hold other-
wise creates a huge gap in effective deterrence and prose-
cution of the worst cases involving driving while under the
influence. There are no means to deal with this special
governmental need to reduce the enormous cost in life and
property resulting from driving under the influence other
than the implied consent law detailed in section 1547(a)(2).
*See Danforth, supra* (Tamilia, J., dissenting).

As to the remaining issues that the pathologist was
erroneously permitted to testify as to the speed of the
automobile, and the mandatory sentencing provision is un-
constitutional, both are without merit.

As to the first, Dr. Mihalakis, a forensic pathologist, was
interrogated extensively in direct and cross-examination as
to his qualifications. Following the interrogation, the trial
judge found him qualified to testify as to the speed of the
vehicle.

Dr. Mihalakis testified that, since 1963, he has been privy
to 30 to 50 cases of vehicular deaths each year and that
he previously testified, on at least six occasions in Penn-
sylvania courts, on the speed of vehicles based on the
injuries sustained by passengers. Defense counsel was
afforded wide latitude to address his concerns to the jury
and having done so, it was properly within the jury's
discretion to accept or reject the doctor's opinion. Expert
testimony is admissible when it is offered by a witness
with any reasonable pretension to specialized knowledge
on the subject under investigation. *See Kravinsky v.
Glover,* 263 Pa.Super. 8, 396 A.2d 1349 (1979), citing
*Ragan v. Steen,* 229 Pa.Super. 515, 331 A.2d 724 (1974).
(Slip Op., Davison, J., p. 5.) I see no reason to go beyond
this accurate statement of the law to affirm the court's
holding on this issue.

As to the validity of the mandatory sentencing provisions,
their constitutionality is beyond dispute. The appellant

makes an unsupported bald statement that the laws are unconstitutional. However, in his brief, the appellant acknowledges the DUI law was held to be constitutional in *Commonwealth v. Wright*, 508 Pa. 25, 494 A.2d 354 (1985), *Commonwealth v. Kunselman*, 363 Pa.Super. 475, 526 A.2d 443 (1987), and *Commonwealth v. Hernandez*, 339 Pa.Super. 32, 488 A.2d 293 (1985). Since our Supreme Court has resolved this issue, appellant's allegation of unconstitutionality must be unavailing before this Court and need not be addressed further. Neither is appellant's plea that an 18 year old should not be subject to the driving under the influence laws, since he is not permitted to drink until he is 21 years old. This argument is specious at best. The prohibition of sale or use of alcohol to persons under 21 is in recognition that persons under 21 are more apt to be harmed or cause harm by drinking than those over 21. To permit a person to be immunized from the consequence of his illegal act, when the act *and* the *resulting* crime are both punishable, is an argument that defies reason.

I would affirm the jury convictions and judgment of sentence.

Joined by BROSKY, J.

KELLY, Judge, dissenting.

I agree, on different grounds, that 75 Pa.C.S.A. § 1547(a)(2), is unconstitutional. I find, however, that reasonable suspicion existed to justify the blood test in the instant case. Hence, I dissent and would affirm judgment of sentence.

I. *Constitutionality of 75 Pa.C.S.A. § 1547(c)*

As enacted, the current implied consent statute leaves *unfettered discretion to the officer in the field* to determine whether or not to invoke implied consent and request that a conscious driver submit to the blood test or direct that the test be performed on an unconscious driver. 75 Pa.C.S.A. § 1547(a)(2). While *every* driver who falls within the triggering language of the statute is deemed to consent,

there is no requirement that *all* deemed to consent be tested. Rather, the officer in the field may pick and choose which to test on an entirely *ad hoc* basis. The absence of sufficient restrictions on the officer's discretion as to *which* conscious drivers are to be requested to submit to a blood test, or *which* unconscious drivers are to be subjected to the blood test, renders the implied consent provision unconstitutional, even if a mandatory "request or test" provision applicable to *all* such drivers *could* pass constitutional muster *Cf. Florida v. Wells,* —— U.S. ——, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990); *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987); *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973); *Commonwealth v. Leninsky,* 360 Pa.Super. 49, 519 A.2d 984 (1986). Hence, I agree that the statute is unconstitutional.

I do not find it necessary here to determine if the rationale of "special need" to preserve highly evanescent evidence of blood alcohol content at the time of a serious train accident *via* warrantless, suspicionless blood testing of train crews for non-criminal prosecution, regulatory purposes in *Skinner v. Railway Labor Executive Assn.,* 489 U.S. ——, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), could be extended to permit warrantless, suspicionless blood tests of drivers involved in serious automobile accidents, for criminal prosecution purposes. Nonetheless, in response to the majority's broad prohibition, I note that I would be inclined to agree with Judge Tamilia that the rationale of *Skinner* should be extended to cover implied consent cases, provided the officer's discretion, as to which persons (deemed to have consented) would be tested, was regulated in a rational and systematic manner.

## II. *Presence of Reasonable Suspicion*

I find that reasonable suspicion existed in this case to believe that appellant was intoxicated at the time of the accident. Given the circumstances presented, I find that reasonable suspicion was sufficient to justify the blood test, and to render that test constitutionally reasonable.

At approximately 4:00 a.m. on Saturday, March 30, 1985, Jeffrey Greb and Mark Moser were passengers in a car driven by appellant, Bruce A. Kohl. Though the pavement was dry and visibility was clear, the car failed to negotiate a turn, struck a telephone pole, and then an embankment.

Police arrived at the scene moments later. They pulled appellant from behind the steering wheel and removed his passengers shortly before the demolished vehicle burst into flames. Jeffrey Greb was pronounced dead at the scene; Mark Moser died *en route* to the hospital. Appellant, who was unconscious, was transported to the hospital by medivac helicopter. The police at the scene had no opportunity to question or examine appellant for signs of intoxication at the scene. After appellant had been evacuated, the investigation at the scene continued, and revealed several critical facts. The pavement was dry and visibility was clear, the car had been travelling at a high rate of speed, and the brakes were not applied prior to impact.

I find that a reasonable suspicion of possible intoxication is raised when a car carrying three young men at 4:00 a.m. on a Saturday morning fails to negotiate a curve at a high rate of speed, and a telephone pole is struck without the brakes having been applied, despite dry pavement and clear visibility. While other less burdensome alternatives might be more appropriate to confirm or dispel such reasonable suspicions when the driver is conscious and cooperative, I have no difficulty in affirming a request for a *minimally intrusive* blood test under the circumstances as presented here.[1]

When there is reasonable suspicion to believe a motorist has driven while being intoxicated, the police are fully authorized to detain the motorist, question the motorist, and

---

1. Evidence in this case indicated that it is standard medical practice to conduct blood alcohol tests on auto accident trauma patients. In this case, a blood alcohol test had already been ordered by appellant's treating physician when the officer's request was made. Blood alcohol tests generally are minimally intrusive. When the suspect is a patient subject to the same test for medical purposes, the disclosure of the results of a dual purpose test, or the drawing of two vials of blood for testing, is even *less* intrusive.

request the performance of simple tasks like walking a straight line, focusing on a moving pen, picking up change while standing on one-foot, or reciting the alphabet. *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (upon reasonable suspicion, detained motorist requested to perform balancing test); *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (upon *reasonable suspicion,* detained motorist requested to touch his finger to his nose and to walk a straigh line). Those activities, or even simply observing the suspect's demeanor during a brief investigation detention, provide the officer with an opportunity to look for common signs of intoxication, including odor of breath, flushed appearance, lack of muscular coordination, speech difficulties, disorderly or unusual conduct, mental or visual difficulties, sleepiness, dizziness, and nausea. *See Commonwealth v. Leninsky, supra,* 519 A.2d at 990 n. 6. Observation of any such symptoms in a driver involved in a serious automobile accident gives rise to probable cause, and fully justifies a constitutionally reasonable, warrantless, minimally intrusive blood test. *See Commonwealth v. Haynos,* 363 Pa.Super. 1, 525 A.2d 394 (1987); *Commonwealth v. Pelkey,* 349 Pa.Super. 373, 503 A.2d 414 (1985).

When, as here, there is a serious accident and a driver/suspect is in need of prompt medical attention, the investigating officers must yield to that *exigency,* and forego investigative detention, questioning, and observation. It is the medical *exigency* requiring officers to forgo lawful investigative detention which I find creates a "special need" which renders a warrantless, minimally intrusive blood test based upon reasonable suspicion, constitutionally reasonable in such cases, *especially* when the suspect is unconscious.

The purpose of a blood test in such circumstances is to confirm *or dispel* suspicions of intoxication by preserving *highly evanescent* evidence of the blood alcohol content at the time of the accident, when lawful alternatives are precluded by the exigency of the suspect's medical emer-

gency.  It should not be forgotten that, in the circumstances presented here, such evidence may acquit one whom circumstances might otherwise convict by preserving *potentially exculpatory* evidence which an *unconscious* driver cannot act on his or her own behalf to preserve.

Hence, I dissent.