J-S72006-16

2017 PA Super 18

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| KIM DAVID MARCH | |
| Appellee | No. 530 MDA 2016 |

Appeal from the Order Entered March 3, 2016
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0005650-2015

BEFORE:  GANTMAN, P.J., DUBOW, J., and STRASSBURGER, J.*

OPINION BY GANTMAN, P.J.:                **FILED JANUARY 26, 2017**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Berks County Court of Common Pleas, which granted the suppression motion of Appellee, Kim David March, and suppressed the results of his blood alcohol test ("BAC").[1]  For the following reasons, we reverse and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. On July 14, 2015, Sergeant Kimberly Brown of the Cumru Township Police

---

[1] The Commonwealth has certified in its notice of appeal that the trial court's suppression order substantially handicapped or terminated the prosecution of the Commonwealth's case.  Accordingly, this appeal is properly before us for review.  **See** Pa.R.A.P. 311(d); **Commonwealth v. Astillero**, 39 A.3d 353, 354 n.1 (2012).

---

*Retired Senior Judge assigned to the Superior Court.

Department responded at 6:31 p.m. to a single vehicle accident at 601 Philadelphia Avenue, near Cumru Elementary School. When Sergeant Brown arrived at the scene around 6:36 p.m., EMS was already there, treating Appellee, who was the unresponsive, male driver. EMS then took Appellee to Reading Hospital for emergency medical care and treatment. Sergeant Brown learned from witnesses to the accident that the vehicle had been traveling eastbound on Philadelphia Avenue when it drove across the westbound lane, went off the road, and struck a tree and utility pole. Witnesses stated the vehicle "did not appear to have a reason to drive off of the roadway." Witnesses also described the driver as "out of it" and "pale." Police were able to identify Appellee through vehicle registration.

In plain view inside the vehicle, Sergeant Brown noticed five blue wax paper bags and the bottom of a cut-off prescription bottle on the floor of the vehicle near the driver's seat. The prescription bottle contained residue consistent with liquid added to heroin and used in the injection of hypodermic needles. Another officer saw a hypodermic needle on the floor of the front passenger side of the vehicle.

Sergeant Brown went directly to Reading Hospital, where she requested a sample of Appellee's blood. Although police now had probable cause, Appellee was not yet under arrest. Appellee was unconscious, and Sergeant Brown could not read the Implied Consent DL26 form to Appellee. Appellee's blood was drawn at 7:59 p.m.; the results indicated the presence

of several Schedule I controlled substances in Appellee's blood.

On August 6, 2015, the Commonwealth charged Appellee with DUI (controlled substance), possession of drug paraphernalia, possession of a controlled substance, and a summary traffic offense, arising from the accident. The Commonwealth later added another related DUI charge. On January 14, 2016, Appellee filed an omnibus pretrial motion containing a motion to suppress the blood evidence as based on an alleged illegal blood draw. The court held a suppression hearing on February 12, 2016. The parties stipulated to the facts in the affidavit of probable cause and that a search warrant was not obtained prior to the draw of Appellee's blood.

On March 3, 2016, the court issued its Findings of Fact and Conclusions of Law and suppressed the blood test results. The Commonwealth timely filed a notice of appeal on March 31, 2016. On April 1, 2016, the court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which the Commonwealth timely filed on April 18, 2016.

The Commonwealth presents one issue for our review:

> DID THE TRIAL COURT ERR IN SUPPRESSING EVIDENCE OF [APPELLEE'S] BLOOD TEST RESULTS, AS THE POLICE HAD THE REQUISITE REASONABLE SUSPICION/PROBABLE CAUSE TO REQUEST A LEGAL BLOOD DRAW WITHOUT A WARRANT PURSUANT TO THE IMPLIED CONSENT STATUTE?

(Commonwealth's Brief at 4).

The relevant standard and scope of review is:

> When the Commonwealth appeals an order suppressing evidence, we may consider on review only the evidence from the defendant's witnesses along with the Commonwealth's evidence that remains uncontroverted. Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

*Commonwealth v. Guzman*, 44 A.3d 688, 691-92 (Pa.Super. 2012) (citing

*Commonwealth v. Brown*, 606 Pa. 198, 203, 996 A.2d 473, 476 (2010)).

In its argument, the Commonwealth asserts that the Pennsylvania Implied Consent Statute, at 75 Pa.C.S.A § 1547, is an independent exception to the warrant requirement. The Commonwealth observes that Appellee was unconscious and unable to refuse the test, and Pennsylvania law has declined to provide unconscious persons with the right to refuse chemical testing. Additionally, Appellee was involved in a motor vehicle accident that required medical treatment, there was evidence of the use of controlled substances present at the scene of the accident, and probable cause existed to request a legal blood draw. The Commonwealth emphasizes that Pennsylvania has declined to extend the right to refuse blood testing to unconscious persons, and there was probable cause to believe Appellee had violated 75 Pa.C.S.A. § 3802, so the blood draw was valid. The Commonwealth concludes the trial court erred in suppressing the blood test results under these circumstances, and asks this Court to reverse and remand the case for trial.

In response, Appellee primarily relies on *Commonwealth v. Myers*,

118 A.3d 1122 (Pa.Super. 2015), *appeal granted*, ___ Pa. ___, 131 A.3d 480 (2016), for the proposition that a warrantless blood test of an unconscious person, under Pennsylvania's Implied Consent Statute, violates the United States Supreme Court's judgment in ***Missouri v. McNeely***, ___ U.S. ___, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), where the Court held that the dissipation of alcohol in the blood does not constitute a *per se* urgency to justify a warrantless blood test under the "exigent circumstances" exception to the warrant requirement. Appellee concludes the warrantless test of his blood was unconstitutional under ***McNeely***, and the results from his test should remain suppressed, because the facts of his case are virtually indistinguishable from ***Myers***. For the following reasons, we disagree with Appellee's position and agree with the Commonwealth's position.

Analysis of this case involves the intersection of two relevant statutes; the first statute is Pennsylvania's implied consent statute, which provides in pertinent part:

> **§ 1547. Chemical testing to determine amount of alcohol or controlled substance**
>
> **(a) General rule.**—Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:
>
> > (1) in violation of section 1543(b)(1.1) (relating to

driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock); or

\* \* \*

**(b) Suspension for refusal.—**

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

(ii) For a period of 18 months if any of the following apply:

\* \* \*

(2) It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and

(ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

\* \* \*

**(c) Test results admissible in evidence.—**In any

summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

\* \* \*

75 Pa.C.S.A. § 1547(a)(1), (b)(1)(i-ii), (b)(2)(i-ii), (b)(3), (c). Legal precedent has interpreted the "reasonable grounds" requirement of Section 1547(a) to demand probable cause. *Commonwealth v. Riedel*, 539 Pa. 172, 180, 651 A.2d 135, 139-40 (1994) (citing *Commonwealth v. Cieri*, 499 A.2d 317, 322 (Pa.Super. 1985)). Under these circumstances, probable cause exists where "the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver had been driving under the influence of alcohol or a controlled substance." *Commonwealth v. Simon*, 655 A.2d 1024, 1027 (Pa.Super. 1995) (quoting *Commonwealth v. Welshans*, 580 A.2d 379, 381 (Pa.Super. 1990)).

Generally, "a search or seizure is unreasonable unless conducted pursuant to a valid search warrant upon a showing of probable cause." *Commonwealth v. Miller*, 996 A.2d 508, 512 (Pa.Super. 2010). One of the standard exceptions to the warrant requirement is consent, either actual or implied. *Riedel, supra* at 179, 651 A.2d at 139. The Implied Consent Statute dispenses with the need to obtain a warrant in DUI cases, because

the driver's implied consent under the statute satisfies the consent exception to the warrant requirement. *Riedel, supra*; *Commonwealth v. Barton*, 690 A.2d 293, 296 (Pa.Super. 1997).

Under the Implied Consent Statute, consent is a given and "testing is allowed absent an affirmative showing of the subject's refusal to consent to the test at the time that the testing is administered." *Commonwealth v. Eisenhart*, 531 Pa. 103, 109, 611 A.2d 681, 683 (1992). *See also Riedel supra* at 183, 651 A.2d at 141. Because consent is implied, a person's "actual consent would be no different from his remaining silent." *Eisenhart, supra* at 108-9, 611 A.2d at 683. Section 1547 "grants an explicit right to a driver who is under arrest for driving under the influence to refuse to consent to chemical testing." *Id.* at 109, 611 A.2d at 683. *See also Riedel*, *supra* at 183, 651 A.2d at 141. On the other hand, a driver who is not under arrest at the time the blood test is administered "cannot claim the explicit statutory protection of section 1547(b)." *Id.* at 184, 651 A.2d at 142.

As the decision to "distinguish between classes of drivers in the implied consent scheme is within the province of the legislature," the Pennsylvania Supreme Court has refused to "reformulate the law to grant an unconscious driver or driver whose blood was removed for medical purposes the right to refuse to consent to blood testing." *Id.* at 185, 651 A.2d at 142. (some internal citations omitted). This concept brings us to the other

statute implicated in this case, which covers reports by emergency room personnel and provides:

**§ 3755. Reports by emergency room personnel**

**(a) General rule.**—If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. This section shall be applicable to all injured occupants who were capable of motor vehicle operation if the operator or person in actual physical control of the movement of the motor vehicle cannot be determined. **Test results shall be released upon request of the person tested, his attorney, his physician or governmental officials or agencies.**

\*  \*  \*

75 Pa.C.S.A. § 3755(a) (emphasis added). Section 3755 comes into play when the defendant requires medical treatment "as a result of a motor vehicle accident," and there is probable cause to believe a DUI is involved; in that circumstance, police can request a blood draw and/or the test results, without a warrant. 75 Pa.C.S.A. § 3755(a). ***Compare Myers, supra*** (holding Section 1547 prevailed over Section 3755, where case did not involve motor vehicle accident, defendant was conscious when arrested, and police waited until defendant was rendered unconscious by hospital

administration of medication to seek chemical testing; defendant retained protection of implied consent law and right to refuse testing under these circumstances; police could not wait until defendant was reduced to unconscious by medication to invoke Section 3755 and claim exigent circumstances).

Both our Supreme Court and this Court have previously concluded:

> [T]ogether, sections 1547 and 3755 comprise a statutory scheme which, under particular circumstances, not only imply the consent of a driver to undergo chemical or blood tests, but also require hospital personnel to withdraw blood from a person, and release the test results, at the request of a police officer who has probable cause to believe the person was operating a vehicle while under the influence.

**Barton, supra** at 296 (citing **Riedel, supra** at 180, 651 A.2d at 139-40). The legislature enacted these two statutes to "allow law enforcement to preserve blood samples of a person suspected of driving under the influence of drugs or alcohol." **Miller, supra** at 512 (citing **Commonwealth v. West**, 834 A.2d 625, 628 (Pa.Super. 2010), *appeal denied*, 586 Pa. 712, 889 A.2d 1216)). The purpose of statutory implied consent is "to enable the police to obtain evidence of intoxication or drug use to be utilized in criminal proceedings"; the purpose is "**not** to hinder law enforcement officers in performing their duties under sections 3755 and 1547 when they have probable cause." **Riedel, supra** at 182, 651 A.2d at 140 (emphasis in original).

Under Sections 1547 and 3755:

> [O]nce an officer establishes probable cause to believe that a person operated a motor vehicle under the influence, and subsequently requests that hospital personnel withdraw blood samples for testing of alcohol content, the officer is entitled to obtain the results of such tests, regardless of whether the test was performed for medical purposes or legal purposes.

*Barton, supra* at 299-300. The Pennsylvania Supreme Court has, however, stated, "[o]ur decision does not grant police officers *carte blanche* to invade the privacy of an individual's medical records." *Id.* at 300 (quoting *Riedel*, *supra* at 183, 651 A.2d at 141). Instead, the "scope of the intrusion is limited to obtaining the results of the blood test." *Barton*, *supra* at 300.

In other words, the statutes and pertinent law tell us that if a driver is involved in a motor vehicle accident, is unconscious, and requires immediate hospital medical treatment, and the police have probable cause to believe the motorist was DUI, then the police can request and receive blood test results from hospital personnel without a warrant. *See* 75 Pa.C.S.A. §§ 1547, 3755; *Riedel, supra*; *Barton, supra*.

In the present case, police responded at 6:31 p.m. to a single vehicle accident. When police arrived at the scene, EMS was already there, treating Appellee, who was the unresponsive, male driver. EMS then took Appellee to Reading Hospital for medical treatment. Sergeant Brown learned from witnesses to the accident that Appellee's vehicle had been traveling eastbound on Philadelphia Avenue before it crossed into the westbound lane, went off the road, and struck a tree and utility pole. Witnesses also

described the driver as "out of it" and "pale." Police were able to identify Appellee through vehicle registration.

When Sergeant Brown approached the empty vehicle, she noticed five blue wax paper bags and the bottom of a cut-off prescription bottle on the floor of the vehicle near the driver's seat. The prescription bottle contained residue consistent with liquid added to heroin and used in the injection of hypodermic needles. Another officer saw a hypodermic needle on the floor of the front passenger side of the vehicle. Given this probable cause to suspect DUI was involved, Sergeant Brown went to Reading Hospital, where she requested a sample of Appellee's blood. Although police now had probable cause to suspect DUI, Appellee was not yet under arrest. Appellee was also unconscious so Sergeant Brown did not read the Implied Consent DL26 form to Appellee. Appellee's blood was drawn at 7:59 p.m., and the results indicated the presence of several Schedule I controlled substances in Appellee's blood. As a result, the Commonwealth charged Appellee with DUI and related offenses. Appellee filed an omnibus pretrial motion to suppress the blood evidence as illegally obtained. The court held a suppression hearing on February 12, 2016, where the parties stipulated to the facts in the affidavit of probable cause. On March 3, 2016, the court suppressed the blood test results, reasoning as follows:

**Findings of Fact**

1. On July 14, 2015, Sergeant Kimberly Brown of the Cumru Township Police Department responded to a single

vehicle accident near Cumru Elementary School, located at 601 Philadelphia Avenue in Berks County, Pennsylvania.

2.    When Sergeant Brown arrived at approximately 6:36 P.M., EMS was already there providing medical treatment to an unresponsive male.

3.    Sergeant Brown learned from witnesses that the vehicle was driving eastbound on Philadelphia Avenue until it went off the road, striking a tree and a utility pole.

4.    Sergeant Brown learned from witnesses that the operator of the vehicle was "out of it" and "pale."

5.    Sergeant Brown approached the vehicle and observed five blue wax paper bags and the bottom of a cut-off prescription bottle on the driver's side floor.

6.    The blue wax paper bags contained a powder that was field tested and yielded a presumptive positive for heroin.

7.    Sergeant Pinkasavage observed a hypodermic needle on the front passenger floor of the vehicle.

8.    Sergeant Brown proceeded to Reading Hospital, where she requested that a sample of the Defendant's blood be drawn pursuant to the implied consent law.

9.    The Defendant was not conscious when Sergeant Brown made the request.

10.    Sergeant Brown did not read the DL26 form to the Defendant.

11.    At approximately 7:59 P.M., blood was drawn by the phlebotomist and placed in tubes with the wrong name listed on them.

12.    The lab would not accept the tubes until the labels were corrected.

13.    The labels on the tubes were subsequently corrected.

14. According to the National Institute of Health, heroin can be detected in the body for one to two days, as opposed to alcohol, which can only be detected for three to ten hours.[2]

[2]https://www.nlm.nih.gov/medlineplus/ency/article/003578.htm

### Conclusions of Law

1. "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 615 Pa. 395, 407, 42 A.3d 1040, 1047-48 (Pa. 2012).

2. The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

3. A warrantless search of the person is reasonable only if it falls within a recognized exception. *See United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, [471, 38 L.Ed.2d 427, ___] (1973).

4. "One well-recognized exception applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460, 131 S.Ct. 1849, 1856[, 179 L.Ed.2d 865, ___] (2011).

5. The United States Supreme court held that the natural [metabolism] of alcohol in the bloodstream does not present a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing. [*McNeely, supra*].

6. The Court further held that "exigency in this context must be determined case by case based on the totality of the circumstances." *Id.*

7. "In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* at 1561.

8. The Pennsylvania Superior Court held that 75 Pa.C.S.A. § 1547(b)(1) provides a driver "with the statutory right of refusal to blood testing." [*Myers, supra*].

9. In *Myers*, the Superior Court held that a warrantless blood draw of an unconscious individual that was performed pursuant to Pennsylvania's implied consent law violated the United States Supreme Court's holding [*McNeely, supra*.]

10. All of the cases cited by the Commonwealth were decided prior to the Superior Court's holding in *Myers*.

11. Other than the fact that the police officer in *Myers* read the standard implied consent warnings to the unconscious defendant while Sergeant Brown, in the instant case, did not, the facts of this case are nearly indistinguishable from the facts in *Myers*.

12. In addition, [Appellee] in the instant case was suspected of being under the influence of heroin, which is detectable for a longer period of time than alcohol.

13. Therefore, the exigency in this case was even less than it was in *Myers*. The Commonwealth could have waited for [Appellee] to gain consciousness and either consent to or refuse the blood test.

14. In the alternative, the Commonwealth could have obtained a search warrant.

15. Since the Commonwealth did neither, the blood test results must be suppressed because they violate the

Superior Court's holding in [***Myers, supra***].

(Suppression Court's Findings of Fact and Conclusions of Law, filed March 3, 2016, at 3-6).  We respectfully disagree with the court for the following reasons.

Initially, the suppression court's and Appellee's reliance on ***McNeely*** is incorrect because the ***McNeely*** analysis did not involve an automobile accident or the "consent" exception under an Implied Consent Statute. ***McNeely*** involved a motor vehicle stop for speeding and crossing the centerline of the road.  After the defendant refused a breathalyzer test, police placed the defendant under arrest and took him to a hospital for blood testing.  Police did not attempt to obtain a search warrant.  At the hospital, and after a police officer read the implied consent form to the defendant, the defendant refused to consent to a blood draw.  Despite the refusal, the police officer directed hospital personnel to proceed with the test.  The defendant moved to suppress the blood test results, arguing the warrantless drawing of his blood violated his Fourth Amendment rights.  The ***McNeely*** Court held that the dissipation of alcohol in blood does not constitute a valid *per se* exigency to justify a warrantless blood test.  The ***McNeely*** Court analyzed the issue solely under the "exigent circumstances" exception to the Fourth Amendment warrant requirement.  Because the defendant in ***McNeely*** had explicitly declined a blood test under Missouri's Implied Consent Law, the state tried to use the "exigent circumstances" exception to

the warrant requirement to get around the defendant's refusal. The *McNeely* Court refused to adopt a categorical "rule of exigency" in DUI cases. *See McNeely, supra*.

In contrast to *McNeely*, here Appellee was involved in a motor vehicle accident and removed, unconscious, from the scene by ambulance for emergency medical treatment, thus triggering Section 3755. Appellee was not under arrest, so he had no right to refuse the blood test under Pennsylvania's Implied Consent Statute. *See Riedel, supra*. While Appellee was at the hospital, police investigated the accident and uncovered probable cause to believe a DUI was involved. Given the automobile accident and the probable cause to suspect DUI, police were allowed to request and receive blood test results from hospital personnel without a warrant. *See* 75 Pa.C.S.A. §§ 1547, 3755; *Riedel, supra*; *Barton, supra*. Because *McNeely* involved only the "exigent circumstances" exception to the warrant requirement, it is not dispositive of the present case.

Likewise, the suppression court's and Appellee's reliance on *Myers* is misplaced because the facts of *Myers* are distinguishable. In *Myers*, police observed the defendant sitting in his parked vehicle while sporadically pressing the brake pedal. The defendant then exited his vehicle and approached the police cruiser. The defendant appeared intoxicated and smelled like alcohol, so police placed him under arrest, based on probable cause to believe he could not safely operate his vehicle. Police called a

wagon and transported the defendant to the hospital to be medically cleared. About forty-five minutes later, a police officer arrived at the hospital. By that time, medications given by the medical staff had rendered the defendant unconscious. Despite his unconscious state, the officer read to him the standard informed consent form and requested hospital staff to perform a warrantless blood draw. The trial court suppressed the warrantless blood draw under the totality of these circumstances, because the defendant was under arrest, he was unconscious and not properly given the right to refuse the blood test, the police had plenty of time to obtain a warrant, and alcohol in the blood is not a *per se* exigency. ***See Myers, supra.***

In contrast to ***Myers***, here Appellee was involved in a motor vehicle accident and removed unconscious from the scene by ambulance for emergency medical treatment, thus triggering Section 3755. Appellee was not under arrest, so he had no right to refuse the blood test under Pennsylvania's Implied Consent Statute. ***See Riedel, supra***. In other words, Appellee could not claim the explicit right that a driver, who is under arrest for DUI, has to refuse to consent to chemical testing. ***See Eisenhart***, ***supra***. While Appellee was already removed to the hospital, police investigated the accident and uncovered probable cause to believe a DUI was involved. Given the automobile accident and the probable cause to suspect DUI, the police had statutory authority to request and receive blood

test results from hospital personnel without a warrant. *See* 75 Pa.C.S.A. §§ 1547, 3755; *Riedel, supra*; *Barton, supra*. Thus *Myers* is not dispositive of the present case.

Finally, Appellee was unconscious and unresponsive at the scene of the accident. The Pennsylvania Supreme Court has refused to "reformulate the law to grant an unconscious driver or driver whose blood was removed for medical purposes the right to refuse to consent to blood testing," so Appellee did not have the right to refuse consent in this case in any event. *See Riedel, supra* at 185, 651 A.2d at 142. Unlike the *McNeely* and *Myers* cases, the interplay between the law on implied consent and the law on the reports by emergency room personnel law in the instant case allowed for Appellee's warrantless blood draw and release of the results. *See Barton, supra* at 296 (citing *Riedel, supra* at 180, 651 A.2d at 139-40) (referring to "statutory scheme" that implies consent of driver to undergo chemical testing and requires hospital personnel "to withdraw blood from a person, and release the test results, at the request of a police officer who has probable cause to believe the person was operating a vehicle while under the influence"). Because Appellee was involved in a motor vehicle accident, was unconscious at the scene and required immediate medical treatment, was not under arrest, and remained unconscious when the blood tests were administered, the warrantless blood draw was permissible. Therefore, we hold the court erred in suppressing the results of Appellee's

blood test.  Accordingly, we reverse and remand for further proceedings.

Order reversed; case remanded for further proceedings.  Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/26/2017