J-A15007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ZACHARY TYLER BOONE | |
| Appellee | No. 2081 MDA 2016 |

Appeal from the Order Entered December 7, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0001539-2016

BEFORE:  MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                **FILED OCTOBER 10, 2017**

The Commonwealth of Pennsylvania appeals from the December 7, 2016 order entered in the York County Court of Common Pleas granting Zachary Tyler Boone's motion to suppress physical evidence and subsequent petition for a writ of *habeas corpus*.  Because we conclude that the arresting officer had probable cause to believe that Boone had driven the vehicle under the influence in violation of section 3802(d)(4) of the Vehicle Code, 75 Pa.C.S. § 3802(d)(4), we reverse and remand.

On November 7, 2015, at approximately 2:35 p.m., Pennsylvania State Police Trooper Raymond Snarski was dispatched to a single-vehicle accident on Baltimore Pike near Reynolds Road, Washington Township, York County.  N.T., 8/1/16, at 4-5 ("N.T. Suppression").  Trooper Snarski arrived at the accident scene roughly 30 to 40 minutes later.  *Id.* at 5.  Trooper

Snarski did not make contact with the driver at that time, as the driver was being transported to Hanover Hospital by emergency medical personnel. *Id.* at 6. Through contact with the emergency medical personnel, Trooper Snarski determined that Boone was the driver of the vehicle. *Id.* at 11.

At the scene, Trooper Snarski discovered Boone's vehicle against a tree approximately 63 feet from the roadway, at a point where the road bent in a right-hand curve. *Id.* at 5, 9. Trooper Snarski found no tire markings on the roadway nor any other evidence that Boone had attempted to swerve, decelerate, or otherwise maneuver the vehicle to "avoid anything." *Id.* at 5-7. In addition, Trooper Snarski found no adverse road conditions, as "[i]t was a sunny day[,] . . . [t]he road was dry[,] . . . [and the accident occurred] during normal daylight hours." *Id*. at 5. According to Trooper Snarski, it appeared as though the vehicle "just . . . continued straight and struck the tree." *Id.*

When Trooper Snarski approached the vehicle, he not only found heavy damage to its front end, but also discovered a box on the floor of the driver's side that contained 107 nitrous oxide canisters. *Id.* at 7. Trooper Snarski also found one such canister on the passenger seat of the vehicle and a whipped-cream dispenser behind the driver's seat. *Id.* When Trooper Snarski opened the dispenser, he found that it was pressured with gas from a loaded nitrous oxide container and contained no whipped cream. *Id.* at 8, 10. Trooper Snarski testified that it is "known that nitrous oxide is a commonly abused inhalant" and that without such a dispenser, the nitrous

oxide canisters "are just bottled gas." ***Id.*** at 10. Trooper Snarski also testified that he found red markings near the tip of the dispenser nozzle that appeared to be dried blood; however, this red substance was not tested to determine whether it was blood. ***Id.*** at 21; N.T., 3/8/16, at 11-12 ("N.T. Prelim.").[1]

After finding this evidence, Trooper Snarski went to Hanover Hospital to question Boone. N.T. Suppression at 10-11. Boone related that he was traveling south on Baltimore Pike, "thought he saw a cat, swerved, and then crashed." ***Id.*** at 11. He also claimed that he had purchased the nitrous oxide containers that day to make cold coffee drinks. N.T. Prelim. at 6. After speaking to Boone, Trooper Snarski interviewed Boone's girlfriend, who admitted that she began "huffing" nitrous oxide with Boone one week earlier and that she had "huffed" nitrous oxide with Boone the day before. N.T. Suppression at 12-13. Trooper Snarski then returned to Boone's hospital room, read Boone the ***O'Connell***[2] warnings, and asked Boone to submit to a blood draw. ***Id.*** at 14. Boone consented, and, while his blood tested negative for nitrous oxide, it tested positive for marijuana metabolites. ***Id.*** at 14-15. Trooper Snarski testified that he believed that inhalants do not

---

[1] The notes of testimony from Boone's preliminary hearing were admitted as evidence at the suppression hearing.

[2] ***Commonwealth, Dep't of Transp., Bureau of Traffic Safety v. O'Connell***, 555 A.2d 873 (Pa. 1989).

remain in the bloodstream long enough for detection and that NMS Labs, an analysis company used by the PSP for blood testing, had told him the same. *Id.* at 15; N.T. Prelim. at 12.

On May 5, 2016, Boone filed a petition for a writ of *habeas corpus* and an omnibus pretrial motion. The omnibus pretrial motion included a motion to suppress the results of his blood test[3] and statements that he and his girlfriend made to Trooper Snarski. On August 1, 2016, the trial court held a hearing. On December 7, 2016, the trial court denied the motion to suppress the statements, granted the motion to suppress the blood test results, and granted the petition for a writ of *habeas corpus*. The trial court concluded that absent testimony that Boone showed signs of intoxication following the accident, the remaining evidence failed to establish probable cause for Boone's arrest. On December 15, 2016, the Commonwealth timely filed a notice of appeal.

The Commonwealth's only issue on appeal is whether "the suppression court err[ed] in granting [Boone]'s motion to suppress where, under the totality of the circumstances, probable cause existed to arrest [Boone] for DUI, the suppression court misapplied the law in its analysis, and the

---

[3] Boone sought to suppress the results on the ground that Trooper Snarski lacked probable cause to arrest him. Boone did not raise an issue regarding the voluntariness of his warrantless blood draw under **Birchfield v. North Dakota**, 136 S.Ct. 2160 (2016), in either his motion to suppress or his brief to this Court.

suppression court engaged in inappropriate fact weighing and credibility determinations[.]" Cmwlth.'s Br. at 4.

Preliminary, we must address Boone's assertion that the Commonwealth has waived its claims on appeal because its Pennsylvania Rule of Appellate Procedure 1925(b) statement is "too vague to permit meaningful appellate review." Boone's Br. at 9. According to Boone, the Commonwealth's Rule 1925(b) statement "fail[ed] to identify what law the Trial Court misapplied," how the trial court misapplied that law, or how the trial court inappropriately weighed the facts before it. *Id.* at 9-10. Further, Boone argues that the Commonwealth waived any challenge to the trial court's grant of *habeas* relief because it did not include it in its Rule 1925(b) statement. *Id.* at 11-12.

It is well settled that "when the trial court directs an appellant to file a [Rule 1925(b)] statement, any issues that are not raised in [that] statement will be waived for appellate review." *Commonwealth v. Smith*, 955 A.2d 391, 393 (Pa.Super. 2008). Further, "when issues are too vague for the trial court to identify and address, that is the functional equivalent of no concise statement at all." *Id.*

We conclude that the Commonwealth's Rule 1925(b) statement is not so vague as to be the functional equivalent of no statement. Because the trial court denied the motion to suppress the statements, it is apparent that the Commonwealth is challenging the trial court's suppression of the blood test results. We recognize that Rule 1925(b) requires appellants to

"concisely identify each ruling or error that [they] intend[] to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). However, Rule 1925(b)(4)(v) also states that "[e]ach error identified in the [s]tatement will be deemed to include every subsidiary issue contained therein which was raised in the trial court." Because these issues are subsidiary to the trial court's suppression ruling and the Commonwealth raised them before the trial court, *see* Cmlwth.'s Mem. of Law in Opp. to Defendant's Omnibus Pretrial Motions, 8/19/16, at 6-9, we decline to find waiver.

The Commonwealth challenges the trial court's order granting Boone's motion to suppress. Our standard of review on such matters is well settled:

> When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review. We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. In appeals where there is no meaningful dispute of fact, as in the case *sub judice,* our duty is to determine whether the suppression court properly applied the law to the facts of the case.

***Commonwealth v. Arthur***, 62 A.3d 424, 427 (Pa.Super. 2013) (internal citations and quotation marks omitted).

The Commonwealth argues that, contrary to the trial court's ruling, Trooper Snarski possessed probable cause to arrest[4] Boone for DUI – controlled substance. Our Supreme Court has set the "well-established legal standard which governs" probable cause determinations:

> Probable cause is made out when "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." **Commonwealth v. Rodriguez**, . . . 585 A.2d 988, 990 ([Pa.] 1991). The question we ask not whether the officer's belief was "correct or more likely true that false." **Texas v. Brown**, 460 U.S. 730, 742 . . . (1983). Rather, we require *only a "probability*, and not a prima facie showing, of criminal activity." **Illinois v. Gates**, 462 U.S. 213, 235 . . . (1983) (citation omitted) (emphasis supplied). In determining whether probable cause exists, we apply a totality of the circumstances test. **Commonwealth v. Clark**, . . . 735 A.2d 1248, 1252 ([Pa.] 1999) (relying on **Gates**, **supra**).

**Commonwealth v. Thompson**, 985 A.2d 928, 931 (Pa. 2009).

Section 3802(d) of the Vehicle Code governs DUI violations where the driver is intoxicated on drugs or a combination of drugs and alcohol:

---

[4] The parties' arguments address only whether Trooper Snarski had probable cause to arrest Boone, not whether Trooper Snarski had probable cause to request a blood draw pursuant to section 1547(a) of the Vehicle Code. In his motion to suppress, Boone argued that Trooper Snarski lacked probable cause to arrest and, as a result, the blood test results must be suppressed as fruit of the poisonous tree. Accordingly, we do not address the related but distinct question whether Trooper Snarski had probable cause to request a blood draw.

**(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1)    There is in the individual's blood any amount of a:

(i)    Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device, and Cosmetic Act.

(ii)    Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device, and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii)    metabolite of a substance under subparagraph (i) or (ii).

(2)    The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

(3)    The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

(4)    The individual is under the influence of a solvent or noxious substance in violation of 18 Pa.C.S. § 7303 (relating to sale or illegal use of certain solvents and noxious substances).

75 Pa.C.S. § 3802(d).  Specifically, section (d)(4) prohibits persons from operating a vehicle under the influence of a solvent or noxious substance in violation of section 7303 of the Crimes Code, which provides, in part:

**(a)    Offense defined.--**No person shall, for the purpose of causing a condition of intoxication, inebriation, excitement, stupefaction, or the dulling of his brain

or nervous system, intentionally smell or inhale the fumes from any noxious substance or substance containing a solvent having the property of releasing toxic vapors or fames.

**(b)** **Exception.--**Subsection (a) of the section shall not apply to the inhalation of any anesthesia for medical or dental purposes.

**(c)** **Possession prohibited.--**No person shall, for the purpose of violating subsection (a) of this section, use, or possess for the purpose of so using, any noxious substance or substances containing a solvent having the property of releasing toxic vapors or fumes.

. . .

**(f)** **Definition.--**As used in this section, the phrase "any noxious substance or substance containing a solvent having the property of releasing toxic vapors or fumes" shall mean any substance containing one or more of the following chemical compounds: . . . nitrous oxide . . .

18 Pa.C.S. § 7303.

According to the Commonwealth, the trial court erred in concluding that Trooper Snarski lacked probable cause to arrest Boone for DUI – controlled substance. The Commonwealth argues that "[b]ased on the totality of the[] circumstances, it was [a] highly likely inference and probability that [Boone] was driving while under the influence of an intoxicating substance when he crashed into the tree[, and therefore] probable cause existed to arrest [him]." *Id.* at 18-19.

Boone argues that the trial court correctly suppressed the blood test results because "the Commonwealth failed to show any evidence of any signs of intoxication or impairment on the part of [Boone]." Boone's Br. at

- 9 -

14. Boone asserts that Trooper Snarski was "compelled to admit on cross-examination . . . that he observed no signs of impairment" and, as a result, the trial court correctly found no probable cause to arrest. *Id.* According to Boone, even with all of the physical evidence in the vehicle, "it remains merely speculative that [he] was under the influence of alcohol or a controlled substance rendering him too impaired to safely drive," and the cases cited by the Commonwealth in support of reversal all "contain specific and important indicia of evidence of probable cause." *Id.* at 16, 18. In effect, both Boone and the trial court would require some direct observation of driver impairment as a necessary precondition to finding probable cause to arrest.

Our recent decision in **Commonwealth v. March**, 154 A.3d 803 (Pa.Super. 2017), is instructive. There, an officer responded to a single-vehicle accident where emergency medical personnel were attending to the unresponsive driver and took him to a local hospital. *Id.* at 805. The officer "learned from witnesses to the accident that the vehicle had been traveling eastbound . . . when it drove across the westbound lane, went off the road, and struck a tree and utility pole." *Id.* A witness also told the officer that "the vehicle 'did not appear to have a reason to drive off of the roadway' [and] described the driver as 'out of it' and 'pale.'" *Id.*

Upon inspecting the vehicle, the officer saw, in plain view, "five blue wax paper bags and the bottom of a cut-off prescription bottle on the floor of the vehicle near the driver's seat." *Id.* "The prescription bottle contained

- 10 -

residue consistent with liquid added to heroin and used in the injection of hypodermic needles." *Id.* "Another officer saw a hypodermic needle on the floor of the front passenger side of the vehicle." *Id.* We ultimately concluded that there was probable cause for a blood draw. *Id.* at 810.

Like the officer in *March*, Trooper Snarski responded to a single-vehicle accident where he could not make contact with the driver. Upon investigating the accident, Trooper Snarski found no adverse conditions that could have caused the accident, nor did he find any indication that Boone's vehicle had swerved or skidded. Rather, it appeared that the vehicle had simply failed to navigate the turn and continued straight into the tree. Upon inspecting the interior of the vehicle, Trooper Snarski found 109 nitrous oxide containers, including one on the passenger seat and another inside a whipped-cream dispenser, which was pressurized with gas. Trooper Snarski also found that the tip of the nozzle was tinged with a red substance. Upon arriving at the hospital, Trooper Snarski learned that Boone, according to his girlfriend, had "huffed" nitrous oxide as recently as the day before the accident, despite Boone's contrary claim that he had purchased the nitrous oxide containers on the day of the accident in order to make cold coffee drinks. Trooper Snarski also noted that Boone's heart rate elevated when he was asked about nitrous oxide use. Based on the totality of the circumstances, we conclude that Trooper Snarski had probable cause to believe that Boone had operated his vehicle under the influence of nitrous oxide in violation of section 3802(d)(4) of the Vehicle Code.

Boone's arguments to the contrary are unpersuasive. Boone is correct that in each of the cases cited by the Commonwealth, the investigating officer or a complaining witness had viewed the suspect exhibiting signs of intoxication. **See March**, 154 A.3d at 805 (noting that "witnesses . . . described [appellee] as 'out of it' and 'pale'"); **Commonwealth v. Thur**, 906 A.2d 552, 558 (Pa.Super. 2006) (noting that Trooper observed "that [a]ppellant had red, bloodshot eyes and smelled moderately of alcohol . . . and [a]ppellant's speech was, at times, slow and labored"); **Commonwealth v. Simon**, 655 A.2d 1024, 1025 (Pa.Super. 1995) (noting that officer "detected a strong odor of alcoholic beverages, . . . [appellant] was shaking uncontrollably," and appellant reported being at concert that had not occurred); **Commonwealth v. Aiello**, 675 A.2d 1278, 1280 (Pa.Super. 1996) (noting that appellant "staggered and was not good on her feet and admitted to consuming "one or two mixed drinks"). However, the probable cause determination is a measure of the totality of the circumstances and does not rely on one particular fact. Rather, our case law makes clear that "[p]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." **Commonwealth v. Salter**, 121 A.3d 987, 994 (Pa.Super. 2015) (quoting **Commonwealth v. Spieler**, 887 A.2d 1271, 1275 (Pa.Super. 2005)). Here, one reasonable inference from the facts presented to the officer was that Boone was operating the vehicle while or after inhaling nitrous oxide and failed to negotiate the turn because he was

intoxicated. The mere fact that Trooper Snarski did not observe Boone under the influence of nitrous oxide did not preclude a determination that, based on the totality of the circumstances, there was probable cause to believe that Boone had operated the vehicle under the influence of nitrous oxide.

Boone also argues that our decision in **Commonwealth v. Kohl**, 576 A.2d 1049 (Pa.Super. 1990), *aff'd*, 615 A.2d 308 (Pa. 1992), precludes a finding of probable cause. In **Kohl**, the appellant crashed his vehicle while attempting to navigate a sharp bend in the road. 576 A.2d at 1051. When the investigating officer arrived on scene, he removed Kohl and two passengers from the vehicle before it burst into flames; both passengers died shortly thereafter from their injuries. *Id.* Kohl was taken to a local hospital and was unconscious for an extended period. *Id.* Although the investigating officers "did not smell alcohol on [Kohl]'s breath or notice any other signs of alcohol consumption by [Kohl]," police had a hospital technician perform a blood alcohol analysis on blood drawn for medical reasons. *Id.* Kohl's BAC was .15%. *Id.* Kohl moved to suppress these results, arguing that officers lacked the probable cause required by section 1547(a)(1) of the Vehicle Code to draw a blood sample. *Id.* at 1052.

We held that the officers lacked probable cause, concluding that our case law required "some indicia of alcohol or drug consumption by the defendant before the police requested a blood or breathalyzer test." *Id.* at 1053. Because no one "detected any signs of alcohol consumption" by Kohl,

- 13 -

such as an odor of alcohol, "evidence of bottles or cups that may have contained alcohol, and no one observed [Kohl] driving erratically," we held that "police did not have probable cause to believe [Kohl] was driving under the influence." *Id.*

*Kohl* is factually distinguishable from this case. Here, Trooper Snarski found physical evidence that Boone may have been "huffing" nitrous oxide. There were 107 unopened containers of nitrous oxide in the vehicle, plus one container on the passenger seat within reach of the operator and another container whose gaseous contents had been injected into a whipped-cream dispenser. Trooper Snarski also found a red substance that looked like blood on the nozzle of the dispenser. Further, while no one observed Boone operating the vehicle erratically, Boone's failure to negotiate the curve, without any indication of attempting to swerve, stop, or otherwise avoid a road hazard or other vehicle, evidences possible intoxication.

The trial court also granted *habeas corpus* relief based on its suppression of the blood test results.[5]  "Because we have reversed the trial

_____

[5] Boone also argues that the Commonwealth has waived any challenge to the trial court's grant of *habeas* relief because it failed to include this challenge in its Rule 1925(b) statement or in its brief.  While Boone is correct that the Commonwealth did not challenge expressly the *habeas* ruling, this Court has held that where "the sole basis for granting . . . [a] request for *habeas corpus* was the trial court's suppression of all of the evidence, . . . the Commonwealth properly preserved the *habeas corpus* issue by appealing the suppression of the evidence." ***Commonwealth v. Rivera***, 672 A.2d 830, 834 n.3 (Pa.Super. 1996).  Therefore, we conclude
*(Footnote Continued Next Page)*

- 14 -

court's suppression ruling, the grounds for its grant of *habeas corpus* relief no longer exist." **Commonwealth v. Huntingdon**, 924 A.2d 1252, 1259 (Pa.Super. 2007). Accordingly, we reverse and remand for the reinstatement of the criminal complaint.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2017

*(Footnote Continued)* ─────────

that the Commonwealth preserved the *habeas corpus* issue by appealing the suppression of the blood test results.