J-S81012-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS JARROD STONE | : | No. 391 MDA 2017 |

Appeal from the Order Entered February 10, 2017
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0002951-2016

BEFORE:   PANELLA, J., STABILE, J., and PLATT*, J.

MEMORANDUM BY PANELLA, J.                    **FILED MAY 01, 2018**

The Commonwealth of Pennsylvania appeals[1] from the order entered in the York County Court of Common Pleas, which granted the suppression motion of Appellee, Thomas Jarrod Stone, and suppressed the results of his blood alcohol test. We affirm.

On the night of May 23, 2014, Appellee and Aaron Groendyk were involved in a single vehicle motorcycle accident in Warrington Township. Pennsylvania State Police were immediately alerted, but by the time Trooper Matthew Kabacinski arrived at the scene, emergency medical services ("EMS") had transported Appellee and Groendyk to York Hospital. After conducting an

---

* Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth has certified in its notice of appeal that the suppression court's order substantially handicapped or terminated the prosecution of this matter. As such, this appeal is properly before us for review. ***See*** Pa.R.A.P. § 311(d).

investigation at the scene of the crash, Trooper Kabacinski arrived at York Hospital to find both Appellee and Groendyk intubated. Trooper Kabacinski directed hospital staff to draw blood from both men in order to test their blood alcohol content ("BAC"). Appellee's BAC registered at .118%, well above the legal limit. Groendyk subsequently died from the injuries he sustained in the accident.

On March 22, 2016, the Commonwealth charged Appellee with homicide by vehicle while driving under the influence, homicide by vehicle, driving under the influence – general impairment, driving under the influence – high rate, and unauthorized use of a motor vehicle.[2] Appellee filed a motion to suppress the BAC results, asserting the authorities illegally obtained his blood in the absence of a warrant or his consent.[3]

At the suppression hearing, Trooper Kabacinski testified that he had investigated numerous traffic accidents in his nine years as a Pennsylvania State Police trooper. Trooper Kabacinski stated that when he arrived on the scene, an EMS technician informed him there was a moderate odor of alcohol on an article of clothing found near the scene of the accident. Based upon this information, and the fact that the accident occurred at night, over a holiday weekend, involved two young male drivers, and that the turn in the road

---

[2] 75 Pa.C.S.A. §§ 3735(a), 3732(a), 3732(a)(1), 3732(b), and 18 Pa.C.S.A. § 3928(a), respectively.

[3] Appellee also filed a petition for writ of *habeas corpus*, which the court later denied.

where the accident occurred was not severe, Trooper Kabacinski believed one of the young men had driven while intoxicated. However, Trooper Kabacinski admitted that Tyler Kline, a witness after the crash who helped Appellee off the road, did not detect any smell of alcohol on Appellee or his clothing. Further, Trooper Kabacinski stated that he had not personally observed the item of clothing that smelled of alcohol, and had been unable to identify the owner of that particular article of clothing.[4]

The suppression court suppressed the blood results, concluding Trooper Kabacinski was not entitled to request hospital staff remit blood samples from Appellee pursuant to 75 Pa.C.S.A. § 3755, as he did not possess probable cause to believe a violation under "section 3731 (relating to driving under the influence of alcohol or controlled substance)," occurred. Suppression Court Opinion, 2/10/17, at 7-11. Additionally, the suppression court found that, even if Trooper Kabacinski possessed probable cause to believe either Appellee or Groendyk had been driving under the influence, the holding in the recent United States Supreme Court case of **Birchfield v. North Dakota**, 136 S.Ct. 2160 (2016), required Trooper Kabacinski to obtain a search warrant prior to requesting blood samples. **See id**., at 11-13. This timely appeal follows.

---

[4] Trooper Kabacinski also testified Kline relayed to him that Appellee told Groendyk they should not call the police. However, Trooper Kabacinski did not appear to find this statement important enough to include it as a factor in forming his belief that driving under the influence had occurred.

On appeal, the Commonwealth presents the following issues for our review:

    I.    DID THE TRIAL COURT ERR IN GRANTING [APPELLEE'S] MOTION TO SUPPRESS?

        A. DID THE TRIAL COURT ERR IN RULING THAT THE TROOPER LACKED PROBABLE CAUSE TO REQUEST HOSPITAL PERSONNEL TO DRAW BLOOD FROM THE DEFENDANT?

        B. DID THE TRIAL COURT ERR IN RULING THAT A SEARCH WARRANT WAS REQUIRED TO DRAW DEFENDANT'S BLOOD WHEN DEFENDANT'S BLOOD WAS LEGALLY DRAWN PURSUANT TO 75 PA.C.S. § 1547[] AND PA.C.S. § 3755?

        C. DID THE TRIAL COURT ERR IN SUPPRESSING [APPELLANT'S] BLOOD DRAW PURSUANT TO THE RULING IN *BIRCHFIELD V. NORTH DAKOTA*, __ U.S. __, 136 S.Ct. 2160 (2016) WHEN *BIRCHFIELD* DOES NOT APPLY TO THE INSTANT CASE?

Commonwealth's Brief, at 4.

Our scope and standard of review following an order granting a suppression motion are as follows.

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Because Appellee prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, "[t]he suppression court's conclusions of law … are not binding on an

appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts." As a result, the conclusions of law of the suppression court are subject to plenary review.

**Commonwealth v. Salter**, 121 A.3d 987, 992 (Pa. Super. 2015) (citation omitted; brackets in original).

The Commonwealth argues the court erred in concluding Trooper Kabacinski did not have the requisite probable cause to request hospital staff draw blood for BAC testing from Appellee. Further, in the event we find Trooper Kabacinski possessed probable cause to request the blood draw, the Commonwealth urges us to hold that the fact that Appellee had not been arrested at the time Trooper Kabacinski requested hospital staff draw his blood negates any warrant requirement suggested by either **Birchfield** or our Supreme Court's decision in **Commonwealth v. Myers**, 164 A.3d 1162 (Pa. 2017). However, we do not reach the issue of whether **Birchfield** and **Myers** required Trooper Kabacinski to obtain a search warrant prior to requesting a sample of Appellee's blood, as we find that Trooper Kabacinski lacked probable cause to conclude that the crime of driving under the influence had occurred.

In Pennsylvania, our Motor Vehicle Code provides, in pertinent part:

> (a)  General rule.—If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of the section 3802 (relating to driving under influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory

- 5 -

licensed and approved by the Department of Health and specifically designated for this purpose. This section shall be applicable to all injured occupants who were capable of motor vehicle operation if the operator or person in actual physical control of the movement of the motor vehicle cannot be determined. Test results shall be released upon request of the person tested, his attorney, his physician or governmental officials or agencies.

75 Pa.C.S.A. § 3755(a).

"Probable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol or a controlled substance." ***Commonwealth v. Welshans***, 580 A.2d 379, 381 (Pa. Super. 1990) (citations omitted). "In determining whether probable cause exists, we must consider the totality of the circumstances as they appeared to the arresting officer." ***Commonwealth v. Griffin***, 24 A.3d 1037, 1042 (Pa. Super. 2011) (citation and internal quotation marks omitted).

The Commonwealth asserts the evidence of probable cause adduced at the suppression hearing clearly supports Trooper Kabacinski's belief that that driving under the influence had occurred. The Commonwealth supports its argument by relying on our finding of probable cause in ***Commonwealth v. Aiello***, 675 A.2d 1278 (Pa. Super. 1996).

There, after coming upon a single vehicle accident, the police discovered defendant behind the wheel of her car with blood on her face and her hands. ***See id***., at 1280. The defendant refused medical assistance, and was observed staggering by the police officer. ***See id***. Additionally, the defendant

- 6 -

admitted to the police officer that she "had one or two mixed drinks" before the accident. *Id*. Based upon this evidence, the court found that the police officer correctly concluded that he had probable cause to believe defendant had been driving under the influence, and was therefore was permitted to request a blood draw. *See id*.

*Aiello* is plainly distinguishable from this case. Notably, the court in *Aiello* based its finding of probable cause, in part, on the *officer's direct observation of the defendant* prior to requesting a blood draw. In fact, *all* of the cases cited by the Commonwealth, where probable cause was found to support a blood draw, rely upon an officer's direct observation of the defendant before requesting the blood draw. *See Commonwealth v. Thus*, 906 A.2d 552, 567 (Pa. Super. 2006) (finding probable cause where a defendant was involved in a head on crash, emitted a moderate smell of alcohol, and appeared to the police officer to have red eyes and labored speech); *Commonwealth v. Simon*, 655 A.2d 1024, 1027-1028 (Pa. Super. 1995) (finding probable cause where police officer observed driver involved in a crash was shaking, making nonsensical statements, and smelled strongly of alcohol); *Commonwealth v. Pelkey*, 503 A.2d 414, 416 (Pa. Super. 1985) (finding probable cause for a blood draw where defendant was found by police

behind the wheel, in a semiconscious state, with an odor of alcohol on his breath).[5]

As Trooper Kabacinksi did not directly observe Appellee prior to requesting the blood draw by hospital personnel, probable cause to suspect driving under the influence must have arisen from circumstances attendant to the crash. The suppression court concluded that these attendant circumstances did not support an inference that driving under the influence had occurred. We are constrained to agree.

In its opinion, the suppression court found the following facts supported Trooper Kabacinski belief that driving under the influence had occurred.

> The turn in the road where the accident occurred was not severe. The motorcycle riders were young males. The accident occurred over a holiday. The time of the accident was at night. And, the officer was advised by an EMT that there was the moderate smell of alcohol on some clothes found at the scene.

Suppression Court Opinion, 2/10/17, at 10.

---

[5] In its initial brief, the Commonwealth also relied on the case of **Commonwealth v. March**, 154 A.3d 803 (Pa. Super. 2017), to support its assertion that probable cause can be developed in a number of different ways. However, in its supplemental brief, the Commonwealth reports that our Supreme Court subsequently vacated **March** and remanded it for reconsideration in light of the decisions in **Myers** and **Birchfield**. **See** Commonwealth's Supplemental Brief, at 1-2; **see also Commonwealth v. March**, 172 A.3d 582 (Pa. 2017) (per curiam order). As such, the Commonwealth notes that it no longer wishes to argue that the holding in March supports its arguments. **See** Commonwealth's Supplemental Brief, at 1.

After reviewing the standard for probable cause, the suppression court concluded that these facts simply did not form the requisite probable cause. *See id*, at 11. Further, while the suppression court recognized that a moderate smell of alcohol on clothing *could* support a finding of probable cause in the right circumstances, Trooper Kabacinski's inability to determine if the clothing smelling of alcohol belonged to the driver of the motorcycle defeated a finding of probable cause under the totality of these particular circumstances. *See id*.

The record supports the suppression court's findings of fact, and we find no error in its application of the law. Trooper Kabacinski was unable to observe either Appellee or Groendyk before formulating probable cause to believe the crash was a result of driving under the influence. While the smell of alcohol on clothing would normally factor into a finding of probable cause, Trooper Kabacinski's inability to tie this clothing to the driver of the motorcycle makes his inference of driving under the influence nothing more than a hunch, with does not rise to the level of probable cause. The totality of the circumstances, when viewed through the lens of the trooper's experience and personal observations, does not support the determination that probable cause existed to request the blood draw under § 3755. As such, the suppression court committed no error in suppressing Appellee's BAC results.[6]

---

[6] As we have determined that the suppression court properly suppressed Appellee's BAC test, we need not reach the merits of the Commonwealth's final two issues on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/01/2018