J-A22037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RICHARD ARDEN REDMAN | |
| Appellant | No. 930 MDA 2014 |

Appeal from the Judgment of Sentence May 13, 2014
In the Court of Common Pleas of Bradford County
Criminal Division at No(s): CP-08-CR-0000580-2013

BEFORE: BOWES, J., JENKINS, J. and PLATT, J.[*]

MEMORANDUM BY BOWES, J.:               **FILED FEBRUARY 12, 2018**

This matter is again before this panel upon remand from the Supreme

Court, after it vacated our decision in light of its recent decision in

***Commonwealth v. Myers***, 164 A.3d 1162 (Pa. 2017). We affirm.

We previously set forth the salient facts:

> On February 27, 2013, at approximately 2:30 a.m., the Pennsylvania State Police dispatched Trooper David Sweeney to the scene of a one-car accident. Three to four minutes later, Trooper Sweeney arrived at the scene and observed a white male (later identified as Appellant) lying in the middle of the crash scene, and a white pickup truck in a pond.
>
> Trooper Sweeney approached Appellant, smelled alcohol, and noted Appellant's eyes were bloodshot and glassy. Appellant was conscious and yelling. Appellant told Trooper Sweeney that he was not the driver of the truck. Some ten to fifteen minutes

---

[*] Retired Senior Judge assigned to the Superior Court.

later, emergency medical personnel removed Appellant and took him by ambulance to a hospital approximately 30 minutes away.

Trooper Sweeney remained at the scene and continued to investigate the crash. He ascertained that Appellant had driven across the double yellow line, hit an embankment, and flipped his truck. Appellant's girlfriend arrived at the scene together with a bartender from the Knight's Out Bar, where Appellant and his girlfriend had been earlier in the evening. The bartender was driving Appellant's girlfriend home. Both the girlfriend and the bartender stated that Appellant had consumed alcohol at the Knight's Out and driven away in the truck. They noted that Appellant left the bar, which was four or five miles from the crash scene, at approximately 2:05 a.m.

Trooper Sweeney left the scene and drove to the hospital. When he arrived, Trooper Sweeney discovered the medical staff had intubated Appellant, rendering him unconscious and unable to consent to a blood draw. Trooper Sweeney directed the medical staff to draw Appellant's blood and they complied at 3:40 a.m. Lab results showed that Appellant had a blood alcohol content of 0.185. On August 13, 2013, the Commonwealth filed a criminal information charging Appellant with DUI. On August 19, 2013, Appellant filed a motion to suppress his blood test results. The trial court conducted a suppression hearing on October 11, 2013. At the hearing, Trooper Sweeney testified to the above information. On cross-examination, Trooper Sweeney admitted that a magisterial district judge ("MDJ") was on call on the night in question, and that a procedure was in place for obtaining a warrant. However, Trooper Sweeney testified that he was familiar with the procedure for obtaining a blood draw without a warrant.

The trial court denied Appellant's motion to suppress on December 4, 2013. Thereafter, on March 11, 2014, the trial court conducted a non-jury trial and found Appellant guilty of DUI. On May 13, 2014, the trial court sentenced Appellant to a term on incarceration of 72 hours to six months.

*Commonwealth v. Redman*, 153 A.3d 1106 (Pa.Super. 2016) (internal citations omitted, unpublished memorandum at *1-3), *vacated* 170 A.3d 1024 (Pa. 2017).

Appellant timely appealed to this Court. Although Appellant challenged the constitutionality of 75 Pa.C.S. § 3755, discussed further *infra*, we affirmed on the grounds that 75 Pa.C.S. § 1547, the Vehicle Code's Implied Consent Law, controlled the matter. Thereafter, the Supreme Court granted Appellant's petition for allowance of appeal, vacated our decision for reconsideration in light of **Myers**, **supra**, and directed this Court to consider Appellant's remaining issues on remand if necessary. Appellant raises two issues for our review:

1. [Title] 75 Pa.C.S.A. [§] 3755 is unconstitutional as it violates [Appellant's] federal constitutional right against a warrantless seizure thus the warrantless blood draw of Appellant should have been suppressed.

2. [The trial court Judge] erred as a matter of law in failing to suppress Appellant's blood test results as his factual finding that the dissipation of alcohol in Appellant's blood and the two hour rule were exigent circumstances negating the necessity of a warrant.

Appellant's brief at 2.

At the outset, we must discuss the jurisprudential developments pertinent to this matter, which occurred after we first considered Appellant's claimed errors. As noted above, when initially tasked with disposing of Appellant's claims, we determined that this matter was controlled by 75 Pa.C.S. § 1547, notwithstanding Appellant's challenge to the trial court's ruling based upon 75 Pa.C.S. § 3577. Section 1547 reads, in relevant part:

(a)    General rule.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one

or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable ground to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock); or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

(b) Suspension for refusal.--

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows [delineating specific punishments].

75 Pa.C.S. § 1547(a) and (b). The statute sets forth that, "if the person refuses to submit to chemical testing," that person will be subject to additional or enhanced criminal penalties. 75 Pa.C.S. § 1547(b)(2)(ii). Significantly, our Supreme Court has previously held that the Implied Consent Law "grants an explicit right to a driver who is under arrest for driving under the influence to refuse to consent to chemical testing." *Commonwealth v. Eisenhart*, 611 A.2d 681, 683 (Pa. 1992).

Also of import is 75 Pa.C.S. § 3755, which governs reports by emergency room personnel. That provision reads, in pertinent part:

(a) General rule.--If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of the section 3802 (relating to driving under influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. This section shall be applicable to all injured occupants who were capable of motor vehicle operation if the operator or person in actual physical control of the movement of the motor vehicle cannot be determined. Test results shall be released upon request of the person tested, his attorney, his physician or governmental officials or agencies.

75 Pa.C.S. § 3755(a). We have held that these two provisions,

comprise a statutory scheme which, under particular circumstances, not only imply the consent of a driver to undergo chemical or blood tests, but also require hospital personnel to withdraw blood from a person, and release the test results, at the request of a police officer who has probable cause to believe the person was operating a vehicle under the influence.

**Commonwealth v. March**, 154 A.3d 803, 809 (Pa.Super. 2017) (citing

**Commonwealth v. Reidel**, 651 A.2d 135, 139-140 (Pa. 1994)).

Since we first determined that § 1547 controlled the disposition of Appellant's appeal, both the United States Supreme Court and the Pennsylvania Supreme Court issued decisions implicating implied consent laws. In **Birchfield v. North Dakota**, 136 S.Ct. 2160 (2016), the United States Supreme Court considered when a warrantless blood draw of an individual under arrest for DUI was justified as a search incident to arrest. First, the Court concluded that a warrantless blood draw was not permissible

as a search incident to arrest, due to the intrusive nature of blood tests. However, the Court sanctioned warrantless breath tests as searches incident to arrest. The High Court also briefly considered the validity of such searches based on statutory implied consent laws. In this vein, it stated:

> It is well established that a search is reasonable when the subject consents, and that sometimes consent to a search need not be express but may be fairly inferred from context. Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them. **It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test.** There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.

*Id*. at 2185 (emphasis added, citations omitted).

The Supreme Court delineated the limit to which a motorist could impliedly consent, concluding "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense."[1] *Id*. at 2186. The Court determined that a warrantless blood draw cannot be justified based on implied consent where an arrestee is criminally prosecuted for refusing to submit to that blood draw.

---

[1] Pennsylvania's Implied Consent Law does not separately criminalize the refusal of a blood test, but rather, subjects an individual to enhanced penalties, which, as noted, raises the same constitutional complaints. *See* 75 Pa.C.S. § 1547.

In *Myers*, *supra*, our High Court addressed § 1547 in light of *Birchfield*, *supra*, in considering whether the statute permitted the warrantless blood draw of an unconscious individual arrested on suspicion of DUI. The Court observed that, under § 1547, if a police officer developed "reasonable grounds" to suspect impairment, then a motorist was deemed to have consented to chemical testing by driving on a Pennsylvania motorway. It further noted that the implied consent law granted DUI arrestees a statutory right to refuse chemical testing on pain of enhanced criminal punishment, so long as an officer has provided the arrestee with notice of that right and its consequences.

Four Justices of our Supreme Court determined that, since the defendant had an absolute statutory right to refuse chemical testing, "the implied consent statute does not authorize a blood test" when the refusal to submit to the test was not knowingly and voluntarily made.[2] *Myers*, *supra* at 1172. It further observed that the plain meaning of § 1547 did not

---

[2] We note that the defendant in *Commonwealth v. Myers*, 164 A.3d 1162 (Pa. 2017), originally challenged his conviction arguing that the warrantless blood draw was unconstitutional pursuant to *Missouri v. McNeely*, 133 S.Ct. 1552 (2013). In *McNeely*, a plurality of the United States Supreme Court determined that, since a blood draw was a search within the Fourth Amendment, a warrant is generally required, unless one of the exceptions to the warrant requirement applied. Specifically, the High Court found that the dissipation of alcohol from the blood did not constitute a *per se* exigency when applying the exigent circumstances exception to the warrant requirement. As *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016), was issued during the pendency of Myer's appeal, and is more directly on point to his constitutional challenge, our High Court relied on that case in rendering its decision.

differentiate between conscious and unconscious arrestees, and therefore, the right to refuse applied to all individuals arrested for DUI. Finally, three Justices of the Court determined that the implied consent statute did not itself serve as an exception to the warrant requirement, but that the voluntariness of an arrestee's consent must be evaluated under the totality of the circumstances, stating, "[s]imply put, statutorily implied consent cannot take the place of voluntary consent." *Id*. at 1176, 1178.

In so concluding, Justice Wecht's writing for the three Justices emphasized that ***Birchfield***, ***supra***, did not undermine the High Court's findings. Justice Wecht highlighted that ***Birchfield*** "provides a general if uncontroversial endorsement of the concept of implied consent." *Id*. at 1178. The Justice asserted that the ***Birchfield*** decision supported the three Justices' conclusion that a motorist's consent must be voluntarily given insofar as ***Birchfield*** emphasized the "coercive effect of the threat of criminal punishment, inasmuch as such coercion may render one's consent involuntary." *Id*. Of import herein, it highlighted the United States Supreme Court's brief recognition of the issues posed by DUI cases involving unconscious drivers:

> It is true that a blood test, unlike a breath test, may be administered to a person who is unconscious (perhaps as a result of a crash) or who is unable to do what is needed to take a breath test due to profound intoxication or injuries. But we have no reason to believe that such situations are common in drunk-driving arrests, and when they arise, the police may apply for a warrant if need be.

*Id*. at 1178-1179 (citing ***Birchfield***, ***supra*** at 2184-2185)). Justice Wecht continued, "[l]est anyone doubt what the Supreme Court meant when it stated that police officers in such circumstances 'may apply for a warrant if need be,' the Court emphasized '[n]othing prevents the police from seeking a warrant for a blood test when there is sufficient time to do so in the particular circumstances or from relying on the exigent circumstances exception to the warrant requirement when there is not." *Id*. at 1179 (citing ***Birchfield***, ***supra*** at 2184)). Thus, in the view of those three Justices, ***Birchfield*** did not suggest that implied consent based on the voluntary operation of a motor vehicle itself represented an exception to the warrant requirement, but rather, it "indicated that a warrant would be required in such situations unless a warrantless search is necessitated by the presence of a true exigency."[3] *Id*.

In light of the above, the three Justices reasoned "implied consent, standing alone, does not satisfy the constitutional requirements for the searches that the statute contemplates." *Id*. at 1181. Nevertheless, it did not find § 1547 unconstitutional, as that issue was simply not before the Court. Rather, the majority position clarified that § 1547 does not itself justify a warrantless blood draw unless the subject voluntarily gives consent,

---

[3] In contrast, an equal number of Justices concluded that implied consent alone served as a sufficient exception to the warrant requirement. ***See*** ***Commonwealth v. Myers***, 164 A.3d 1162, 1185 (Pa. 2017) (Mundy, J., dissenting) ("The plain language of Section 1547(a) [] reveals that anyone who drives on the roads of this Commonwealth has given implied consent to a blood test to measure blood alcohol content if the officer has probable cause to believe the person committed DUI."), (Saylor, C.J., Baer, J., concurring).

notwithstanding the practical difficulties involved in securing consent from an unconscious individual. *Id*. at 1184 (Todd, J., concurring) ("I agree with the majority that, under 75 Pa.C.S. § 1547, Myers had an unequivocal statutory right to refuse blood testing.").

Turning to the matter *sub judice*, we initially determined that § 1547 controlled the outcome of this appeal. Upon further review, and in consideration of **Myers**, **supra**, we acknowledge that ruling must be revisited. Simply, Appellant was not under arrest for DUI at the time Trooper Sweeney directed medical staff to draw his blood. Hence, § 1547, and the statutory right to refuse provided to arrestees that we previously relied upon, was not applicable. 75 Pa.C.S. § 1547(b)(1); **Eisenhart**, **supra**. We previously concluded that, since Appellant was unconscious at the time of his blood draw, he could not avail himself of his statutory right to refuse, and thus, the blood draw was justified based on his implied consent alone. As discussed above, **Myers** held that the Implied Consent Law does not justify a warrantless blood draw of an unconscious arrestee since that individual is permitted, by statute, an opportunity to refuse. On reconsideration, we find that, since Appellant was not under arrest, the warrantless blood draw at issue herein was subject to § 3755, and therefore, we reach the merits of Appellant's claimed errors.

However, as we find Appellant's second issue is dispositive, we do not reach the merits of his constitutional challenge.[4]

Appellant's second issue challenges the trial court's determination that exigent circumstances excused Trooper Sweeney from seeking a warrant to draw Appellant's blood. We are guided by the following principles:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing such a ruling by the suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Evans**, 153 A.3d 323, 327 (Pa.Super. 2016) (brackets and citation omitted).

Exigent circumstances are a well-established exception to the warrant requirement. The exception applies when "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." **Missouri v. McNeely**, 133 S.Ct. 1552, 1558 (2013). In **McNeely**, the Supreme Court

---

[4] We observe that, in so far as **Birchfield v. North Dakota**, 136 S.Ct. 2160 (2016), and **Commonwealth v. Myers**, 164 A.3d 1162 (Pa. 2017), address the validity of implied consent statutes which include criminal penalties for refusal to submit to a blood draw, they do not squarely bear on the constitutionality of 75 Pa.C.S. § 3755. In addition, the right to refuse blood testing contained within 75 Pa.C.S. § 1547 is a statutory guarantee, and neither this Court nor our High Court has found it to be a necessary constitutional protection.

underscored one such situation, where "law enforcement officers may conduct a search without a warrant to prevent the imminent destruction of evidence." *Id*. (citing *Cupp v. Murphy*, 412 U.S. 291 (1973)). When examining such situations, we review the totality of the circumstances. *Id*. at 1559.

Appellant contends that *McNeely*, *supra*, negated the constitutional basis for § 3755. He maintains that, following *McNeely*, the mere dissipation of alcohol from the bloodstream is no longer a dispositive factor when considering exigent circumstances. In addition, he claims that the two-hour rule set forth in 75 Pa.C.S. § 3802,[5] which requires the Commonwealth to prove the alcohol concentration in an individual's blood within two hours of the operation of the vehicle, is not a valid consideration when determining exigency. In this vein, he alleges that there is an exception to the two-hour rule when the Commonwealth establishes good cause as to why the chemical test could not be obtained within the two-hour window. He maintains that, since Appellant was rendered unconscious because of the medical treatment he received following his car accident, the Commonwealth had sufficient cause

---

[5] Section 3802, which governs driving under the influence of alcohol or other controlled substances, requires the Commonwealth to establish the requisite alcohol concentration within an individual's blood "within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(a)(2), (b), (c), (e) and (f). Notwithstanding these provisions, the statute provides an exception to the two-hour rule where "the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours," and, "where the Commonwealth establishes that the individual did not imbibe any alcohol or utilize a controlled substance between the time the individual was arrested and the time the sample was obtained." 75 Pa. C.S. § 3802(g).

to delay the blood test and seek a warrant. He concludes that the Commonwealth could have obtained a warrant, and that it had sufficient time to do so. Thus, the warrantless blood draw was not supported by exigent circumstances. We disagree.

At the suppression hearing, Trooper Sweeney recounted the events preceding Appellant's blood draw. He testified that, at approximately 2:32 a.m. on February 27, 2013, he was dispatched to the scene of a vehicular accident. N.T. Suppression Hearing, 11/11/13, at 2. Upon arriving three to four minutes later, the trooper observed Appellant lying in the middle of the crash scene and a white pickup truck in a pond. *Id*. at 2-3. Appellant, who was being treated by emergency medical services, denied being the driver of the vehicle. *Id*. at 3-4. While interacting with Appellant, Trooper Sweeney noted that he smelled alcoholic beverages emanating from Appellant, and observed that his eyes were glassy and bloodshot. *Id*. at 4. Fifteen minutes later, medical technicians transported Appellant to a hospital one-half hour away and the trooper remained at the scene to investigate. *Id*. at 4-5. While investigating, Appellant's girlfriend and a bartender from the Knight's Out Bar arrived and indicated that Appellant had been drinking prior to leaving the bar at approximately 2:05 a.m. *Id*. at 6, 9-10.

Trooper Sweeney testified that, upon concluding his investigation, he proceeded directly to the hospital. *Id*. at 7-8. When he arrived, Appellant was rendered unconscious due to his medical treatment. *Id*. at 8. At 3:40 a.m., medical personnel, at Trooper Sweeney's direction, drew Appellant's

blood. *Id*. The blood test revealed that Appellant had a blood alcohol content of 0.185. *Id*. at 9. On cross-examination, Trooper Sweeney confirmed that a magistrate was on call that evening, and that he could have obtained a warrant. *Id*. at 10.

Based on the evidence adduced at the suppression hearing, the trial court denied Appellant's motion to suppress. It noted that Trooper Sweeney had probable cause to suspect Appellant had been driving under the influence, and thus, the blood draw was justified pursuant to § 3755. Nevertheless, it observed that Appellant was unable to consent, and since the two-hour deadline imposed by § 3802 was "rapidly approaching," the Court found there was sufficient exigent circumstances to justify the warrantless blood draw. Trial Cout Opinion, 12/4/13, at unnumbered 3.

At the outset, we observe that, contrary to Appellant's position, *McNeely*, *supra*, did not outright disallow or eliminate exigency as a valid basis for a warrantless search, but rather, it merely held that the dissipation of alcohol from the bloodstream is not itself a *per se* exigency obviating the need to secure a warrant. The dissipation of alcohol from the blood stream remains a viable factor when considering exigency, so long as it is not the only factor relied upon when determining if exigent circumstances excuse the warrant requirement in any particular situation.

Under the circumstances of this case, Trooper Sweeney lacked sufficient time to obtain a warrant when he determined that a blood draw was necessary to preserve Appellant's blood sample. As the above testimony indicates,

Trooper Sweeney had a short window to collect the blood sample from Appellant after he established that there was probable cause to believe Appellant had operated his vehicle under the influence of alcohol, and that Appellant was unable to consent to the search. The record reveals that Appellant left the Knight's Out Bar at approximately 2:05 a.m. Since emergency medical personnel were already on-site and treating Appellant's injuries when Trooper Sweeney was dispatched, we can infer that the accident happened at least a few minutes prior to 2:30 a.m. Hence, the trooper had until no later than 4:30 a.m. to ensure the blood sample was collected.

After finishing his investigation, Trooper Sweeney traveled one-half hour to the hospital where Appellant was receiving treatment. It was not until 3:40 a.m., or less than fifty minutes before the two-hour statutory requirement would expire, and at least one hour and thirty five minutes from Appellant's last known drink, that Trooper Sweeney determined a blood draw pursuant to § 3577 was necessary. Until that point, Trooper Sweeney had no reason to believe that Appellant would not be conscious for the purposes of requesting a blood draw, especially since Appellant was conscious when he was transported from the scene of the accident to the hospital.

Further, even acknowledging that an MDJ was on-call to handle warrant requests, Trooper Sweeney was the only officer involved in the matter, and at that hour, it was not reasonably practicable for him to procure the necessary paperwork and contact the MDJ with time remaining to acquire the blood

sample.[6]  ***See Schmerber v. California***, 384 U.S. 757, 770 (1966) (finding officer reasonably believed that delay necessary to obtain a warrant threatened destruction of evidence since time had to be taken to bring accused to hospital and investigate scene of accident).  Under the facts of this case, we find that there was insufficient time to procure a search warrant, especially in light of the state's compelling interest in countering the dangers of DUI.  ***Birchfield***, ***supra*** at 21778-79 (the States and the Federal Government have a "paramount interest . . . in preserving the safety of . . . public highways," and "a compelling interest in creating effective 'deterrent[s] to drunken driving[.]'").  Thus, we find that the suppression court did not err in determining that the exigent circumstances justified the warrantless blood draw performed on Appellant.  Hence, relief is not warranted.

Judgment of sentence affirmed.

Judge Jenkins did not participate in the consideration or decision of this case.

_____

[6] We are not persuaded by Appellant's contention that this matter implicates the "good cause" exception to the two-hour window required by 75 Pa.C.S. § 3802, or that a potentially meritorious "good cause" exception undermines the trial court's finding of exigent circumstances.  We note that neither this Court nor the Supreme Court has found that a person rendered unconscious by medical treatment satisfies the "good cause" exception for the purposes of § 3755.  Moreover, since that question is not squarely before us, we decline to consider the issue.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/12/2018